# UNION OIL COMPANY OF CALIFORNIA *v.* SMITH.

## ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 8. Submitted November 13, 1918.—Decided March 31, 1919.

In order to create valid rights or initiate a title as against the United States under the mining laws, a discovery of mineral within the location is essential. P. 346.

For the purpose of exploring for mineral, a qualified person who has entered peaceably upon vacant public land is treated as a licensee or tenant at will of the United States and allowed, as of necessity, a right of possession, the extent of which, *i. e.*, whether confined to *pedis possessio* or coterminous with the boundaries of his inchoate location,—is not here decided. *Id.*

The right of possession before discovery may be maintained only by continued actual occupancy by a qualified locator or his representatives, engaged in persistent and diligent prosecution of work looking to the discovery of mineral. P. 348.

Discovery may follow the marking and recording of a mining claim, and perfect the location as of the time of discovery, provided no rights of third parties have intervened. P. 347.

The terms "assessments," "annual assessment labor," and "assessment work," in acts of Congress as in the practice of miners, have nothing to do with the locating or holding of a claim before discovery, but refer to the annual labor required by Rev. Stats., § 2324,

ownership of the five and that they are so situated that the sinking of the well upon one will tend to develop, or to prove the oil-bearing character of the remaining claims of his group. There was no need of remedial legislation in·cases where discovery had been made on the claims, because such a discovery itself establishes their oil-bearing character. The mining law requires assessment work as an evidence of good faith. *Chambers* v. *Harrington*, 111 U. S. 350, 353; *McCullock* v. *Murphy*, 125 Fed. Rep. 147, 149. Work done for discovering minerals or in prospecting or developing the claim may be included in the expenditure required as a condition to acquiring patent. It is doubtful if there was any authority in the statute for extending the requirement of annual work to placer claims. Morrison's Mining Rights, 14th ed., 134. For placer locations, such work need not be done within the boundaries of the claim. Lindley on Mines, 2nd ed., p. 1174; *Gordon Gulch Bar Placer*, 38 L. D. 28, 32.

Oil, except in rare cases, lies in stratified formations, often at great depth, requiring vast effort and expenditure and much hazard to reach the deposit and determine its nature and permanency. *McLemore* v. *Express Oil Co.*, 158 California, 561. In this respect it is like blind lodes, which gave occasion to the tunnel site laws, and oil locations should be treated as leniently as tunnel locations—hence this act. The term "mining claim" is used here in the abstract, synonymously·with location. "Annual assessment labor" done upon one of five or fewer contiguous locations, where it would tend to the development or to determine the oil-bearing character of such contiguous locations, applies to work upon unperfected as well as perfected oil locations.

The great purpose was to eliminate the expense of separate discovery work simultaneously upon five or less contiguous locations, by centralizing the work upon one,

when by that the oil-bearing character of the other claims could be effectively determined. The unit of the group contemplated is "oil land . . . located *as* placer mining claims." Such a unit would not necessarily be a perfected claim and, in view of the subsequent language of the act, to imply that it must be such, with discovery thereon, before the act could be applicable, would be to import something into the act which is not contained in its terms.

We submit that the full import of this language is, that the lands shall be oil lands only in the sense in which they are pleaded in the respondent's complaint and in the appellant's amended answer in this action, to be oil lands; that is, lands adjacent to lands which are demonstrated to be oil lands; recognized to be oil lands; in the vicinity of which are outcroppings and evidence of those geological formations which are oil-bearing in their character, and so situated that those who are familiar with that department of geology are able to say, as business men, that probably, if wells shall be sunk in such lands, oil may, as a good business venture, be produced therefrom.

The word "located" means simply delimited by having the boundaries ascertained and monumented on the ground, identified by having a notice of the location posted upon the land, and further proclaimed to the public by having such notice of location recorded in the manner customary under the rules for recording mining claims.

. It has been long recognized, particularly under the decisions in California, commencing with *Miller* v. *Chrisman*, that a claim so located, whether discovery shall have been made thereon or not, is property and the subject of conveyance and the passing of rights therein from one owner to another.

Two or more claims may be actually developed by one

well. And, owing to geological conditions, a well on one may determine the oil character of the other; under the recent decisions of the Land Department it may even amount to a discovery of oil in the other.

Plaintiff in error was not only in possession of the Rawley claim by its possession and sinking of well on the contiguous Sampson claim, but at the time of the pretended location of the alleged Schley claim by Smith and others, and for more than two months prior thereto, was in the actual possession and occupancy of the Rawley and actively engaged in its development through lessees and their assigns, by the work they had begun in November or December, 1909; by their continuation thereof; by their expending money in good faith in shipping tools and machinery by rail and wagon road to the claim, and by their every act, all of which were indicative of possession and development in good faith. A party may be in legal possession, though not personally on the land at the time of a stranger's entry. *Davis* v. *Dennis*, 43 Washington, 54. And see *Weed* v. *Snook*, 144 California, 439, 445; *Phillips* v. *Brill*, 17 Wyoming, 26.

Roadways are necessities, and when such have been constructed on the claim, for the manifest purpose of assisting in the development of the mine, such as transporting material and machinery to the mine, it is a legitimate expenditure. *Doherty* v. *Morris*, 17 Colorado, 105; *Sexton* v. *Washington Co.*, 55 Washington, 380; *Emily Lode*, 6 L. D. 220, 222.

Counsel further claimed that in the years 1909 and 1910 more than $2400.00 worth of actual improvement was done by defendant through its lessees and sub-lessees upon the Rawley claim and that the earliest work claimed by the plaintiff was not only later, but, for several reasons assigned, could not enure to his benefit.

No appearance for defendant in error.

MR. JUSTICE PITNEY delivered the opinion of the court.

This case presents, for the first time in this court, the question of the meaning and effect of an Act of Congress approved February 12, 1903, c. 548, 32 Stat. 825, which reads as follows:

"An Act Defining what shall constitute and providing for assessments on oil mining claims.

"*Be it Enacted, etc.*, That where oil lands are located under the provisions of title thirty-two, chapter six, Revised Statutes of the United States, as placer mining claims, the annual assessment labor upon such claims may be done upon any one of a group of claims lying contiguous and owned by the same person or corporation, not exceeding five claims in all: *Provided*, That said labor will tend to the development or to determine the oil-bearing character of such contiguous claims."

Smith, now defendant in error, being in possession of a placer mining claim known as the "Schley claim," comprising a tract of 160 acres of land in the State of California, part of the public domain of the United States, under a location notice posted and recorded by himself and seven other qualified persons who afterwards conveyed their interests to him, and being engaged in the diligent prosecution of work for the purpose of finding oil upon the claim, brought an action in a California state court to determine adverse claims, making the Union Oil Company of California defendant.

Defendant asserted a superior right of possession under a mineral land location of the same ground under the name of the "Rawley claim," made by eight qualified associates in the year 1883, many years before plaintiff's location. No discovery of oil or other minerals had ever been made upon the ground by either of the claimants or by any other person. But at the time plaintiff and his associates located it defendant, although not then

actually occupying this ground, was in actual occupation of a contiguous claim of 160 acres known as the "Sampson claim" upon which it then was drilling and afterwards continued to drill a well for the discovery of oil, the well being 1,000 feet distant from the boundary line of the disputed claim. Defendant claimed the right of possession of five contiguous claims, including the "Rawley-Schley" and the "Sampson," under locations regularly made in all respects save discovery. Defendant pleaded and proved these facts, and also introduced evidence warranting a finding that its boring work on the "Sampson claim" tended to determine the oil-bearing character of the "Rawley-Schley claim."

It was and is defendant's contention that by virtue of the Act of 1903 one who has acquired the possessory rights of locators before discovery in five contiguous claims taken up as oil-bearing lands may preserve and maintain an inchoate right to all of them by means of a continuous actual occupation of one, coupled with diligent prosecution in good faith of a sufficient amount of discovery work thereon, provided such work tends also to determine the oil-bearing character of the other claims.

The superior court of the county and, on appeal, the Supreme Court of the State overruled this contention and gave judgment in favor of the plaintiff (166 California 217); and the case was brought here by writ of error under § 237, Judicial Code, prior to the amendment of September 6, 1916, c. 448, 39 Stat. 726.

It will be observed that both parties are in the position of prospectors or explorers upon the public domain—locators without discovery; and, in order to appreciate correctly what effect, if any, the Act of 1903 has upon their rights, it is important to have in mind what is meant by "annual assessment labor," and the part it plays in the operations of miners under the mining laws of the United States.

By § 2319, Rev. Stats., all valuable mineral deposits in lands belonging to the United States are declared to be "free and open to exploration and purchase, and the lands in which they are found to occupation and purchase, by citizens of the United States and those who have de-clared their intention to become such, under regulations prescribed by law, and according to the local customs or rules of miners in the several mining-districts, so far as the same are applicable and not inconsistent with the laws of the United States." By § 2320 it is declared: "No location of a mining-claim shall be made until the discovery of the vein or lode within the limits of the claim located." By § 2322 locators of mining locations on the public domain "so long as they comply with the laws of the United States, and with State, territorial, and local regulations not in conflict with the laws of the United States governing their possessory title, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations, and of all veins," etc. By § 2324: "The miners of each mining-district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining-claim, sub-ject to the following requirements: The location must be distinctly marked on the ground so that its boundaries can be readily traced. . . . On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the tenth day of May, eighteen hundred and seventy-two, ten dollars' worth of labor shall be performed or improvements made by the tenth day of June, eighteen hundred and seventy-four, and each year

thereafter, for each one hundred feet in length along the vein until a patent has been issued therefor; but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location." Section 2325 and sections following permit a patent to be obtained for a mineral claim, and regulate the procedure. By § 2325 the applicant for patent is required (among other things) to file "a certificate of the United States surveyor-general that five hundred dollars' worth of labor has been expended or improvements made upon the claim by himself or grantors"; and, upon his compliance with this and other requirements, if after publication of notice for sixty days no adverse claim is filed, or (§ 2326) such claim, having been filed, has proceeded to adjudication in a court of competent jurisdiction with result favorable to the applicant, upon a payment of five dollars per acre and proper fees a patent is issued for the claim or such portion thereof as has been decided to be in the rightful possession of the applicant. By § 2329 placer claims are made subject to entry and patent under like circumstances and conditions and upon similar proceedings as are provided for vein or lode claims; the purchase price of placer claims being fixed, by § 2333, at two dollars and fifty cents per acre.

Under this legislation petroleum for many years was regarded as a mineral, although not specially mentioned as such, and claims to oil lands were disposed of by the Land Department under the provisions of law relating to placer claims, with a single exception afterwards overruled. *Union Oil Co.*, 23 L. D. 222, decided August 27,

1896; *Union Oil Co., (On Review)*, 25 L. D. 351, decided November 6, 1897. It was in order to obviate the effect of the former of these two decisions that Congress passed the Act of February 11, 1897, c. 216, 29 Stat. 526, which declared: "That any person authorized to enter lands under the mining laws of the United States may enter and obtain patent to lands containing petroleum or other mineral oils, and chiefly valuable therefor, under, the provisions of the laws relating to placer mineral claims"; with a proviso saving petroleum land theretofore filed upon, claimed or improved as mineral but not yet patented. See House Rep. No. 2655, 54th Cong., 2d sess.; 29 Cong. Rec., Pt. 2, p. 1409; *Burke* v. *Southern Pacific R. R. Co.*, 234 U. S. 669, 678.

Aside from the suggested effect of the Act of 1903, it is clear that in order to create valid rights or initiate a title as against the United States a discovery of mineral is essential. Section 2320, Rev. Stats.; *Waskey* v. *Hammer*, 223 U. S. 85, 90. Nevertheless, § 2319 extends an express invitation to all qualified persons to explore the lands of the United States for valuable mineral deposits, and this and the following sections hold out to one who succeeds in making discovery the promise of a full reward. Those who, being qualified, proceed in good faith to make such explorations and enter peaceably upon vacant lands of the United States for that purpose are not treated as mere trespassers, but as licensees or tenants at will. For since, as a practical matter, exploration must precede the discovery of minerals, and some occupation of the land ordinarily is necessary for adequate and systematic exploration, legal recognition of the *pedis possessio* of a *bona fide* and qualified prospector is universally regarded as a necessity. It is held that upon the public domain a miner may hold the place in which he may be working against all others having no better right, and while he remains in possession, diligently working towards discov-

ery, is entitled—at least for a reasonable time to be protected against forcible, fraudulent, and clandestine intrusions upon his possession. *Zollars* v. *Evans*, 5 Fed. Rep. 172, 173; *Crossman* v. *Pendery*, 8 Fed. Rep. 693, 694; *Johanson* v. *White*, 160 Fed. Rep. 901; *Hanson* v. *Craig*, 161 Fed. Rep. 861, 863; 170 Fed. Rep. 62, 65; *Gemmell* v. *Swain*, 28 Montana, 331, 335; *New England &c. Oil Co.* v. *Congdon*, 152 California, 211; *Whiting* v. *Straup*, 17 Wyoming, 1, 19, 23; *Phillips* v. *Brill*, 17 Wyoming, 26, 38.[1]

And it has come to be generally recognized that while discovery is the indispensable fact and the marking and recording of the claim dependent upon it, yet the order of time in which these acts occur is not essential in the acquisition from the United States of the exclusive right of possession of the discovered minerals or the obtaining of a patent therefor, but that discovery may follow after location and give validity to the claim as of the time of discovery, provided no rights of third parties have intervened. *Creede & Cripple Creek Mining Co.* v. *Uinta Tunnel Mining Co.*, 196 U. S. 337, 345, 348–352; *Weed* v. *Snook*, 144 California 439, 443.

In the California courts the right of a locator before discovery while in possession of his claim and prosecuting exploration work is recognized as a substantial interest, extending not only as far as the *pedis possessio* but to the limits of the claim as located; so that if a duly qualified person peaceably and in good faith enters upon vacant lands of the United States prior to discovery but for the purpose of discovering oil or other valuable mineral deposits, there being no valid mineral location upon it, such person has the right to maintain possession as against

---

[1] Two recent acts of Congress contain recognition of the status of a *bona fide* occupant of oil-bearing lands in the public domain prior to discovery. Act of June 25, 1910 (36 Stat. 847, c. 421, § 2, first proviso); Act of March 2, 1911 (36 Stat. 1015, c. 201). See *Consolidated Mutual Oil Co.* v. *United States*. 245 Fed. Rep. 521, 524, 527, 529.

violent, fraudulent, and surreptitious intrusions so long
as he continues to occupy the land to the exclusion of
others and diligently and in good faith prosecutes the
work of endeavoring to discover mineral thereon. *Miller*
v. *Chrisman,* 140 California, 440, 447 (case affirmed 197
U. S. 313); *Weed* v. *Snook, ubi supra; Merced Oil Mining
Co.* v. *Patterson,* 153 California, 624, 625; 162 California,
358, 361; *McLemore* v. *Express Oil Co.,* 158 California,
559, 562.

To what extent the possessory right of an explorer
before discovery is to be deduced from the invitation ex-
tended in § 2319, to what extent it is to be regarded as a
local regulation of the kind recognized by that section
and the following ones, and to what extent it derives
force from the authority of the mining States to regulate
the possession of the public lands in the interest of peace
and good order, are questions with which we are not now
concerned. Nor need we stop to inquire whether the
right is limited to the ground actually occupied in the
process of exploration, or extends to the limits of the
claim. These questions and others that suggest them-
selves are not raised by the present record, which con-
cerns itself solely with the rights asserted by the defend-
ant under the Act of 1903. Whatever the nature and
extent of a possessory right before discovery, all authori-
ties agree that such possession may be maintained only
by continued actual occupancy by a qualified locator or
his representatives engaged in persistent and diligent
prosecution of work looking to the discovery of mineral.

But, by the provisions of the Revised Statutes above
cited, a discovery of mineral by a qualified locator upon
unappropriated public land initiates rights much more
substantial as against the United States and all the world.
If he locates, marks, and records his claim in accordance
with § 2324 and the pertinent local laws and regulations,
he has, by the terms of § 2322, an exclusive right of pos-

session to the extent of his claim as located, with the right to extract the minerals, even to exhaustion, without paying any royalty to the United States as owner, and without ever applying for a patent or seeking to obtain title to the fee; subject, however, to the performance of the annual labor specified in § 2324, for upon his failure to do this the claim is open to relocation by others at any time before resumption of work upon it by the original locator.

If not content to rest upon the right conferred by § 2322, the qualified locator may obtain a patent for his claim by complying with the conditions prescribed by §§ 2325 and 2326.

But, even without patent, the possessory right of a qualified locator after discovery of minerals upon the claim is a property right in the full sense, unaffected by the fact that the paramount title to the land is in the United States (Rev. Stats., § 910), and it is capable of transfer by conveyance, inheritance, or devise. *Forbes* v. *Gracey,* 94 U. S. 762, 763, 767; *Belk* v. *Meagher,* 104 U. S. 279, 283, 285; *Del Monte Mining Co.* v. *Last Chance Mining Co.,* 171 U. S. 55, 78; *Elder* v. *Wood,* 208 U. S. 226, 232.

Actual and continuous occupation of a valid mining location based upon discovery is not essential to the preservation of the possessory right. The right is lost only by abandonment, as by non-performance of the annual labor required by § 2324. *Belk* v. *Meagher,* 104 U. S. 279, 283, 284; *Black* v. *Elkhorn Mining Co.,* 163 U. S. 445, 450; *Farrell* v. *Lockhart,* 210 U. S. 142, 147; *Bradford* v. *Morrison,* 212 U. S. 389, 394.

After this brief review of the mining laws there is little danger of mistaking the true intent and meaning of the Act of Congress of February 12, 1903. Title thirty-two, chapter six, Revised Statutes, therein referred to, embraces the sections we have cited. And

it is not to be doubted that the terms "assessments" and "annual assessment labor" refer to the annual labor required by § 2324, that being commonly called by miners the "annual assessment" or the "assessment work," and so described in many judicial opinions and in at least two acts of Congress, passed respectively November 3, 1893, c. 12, 28 Stat. 6, and July 2, 1898, c. 563, 30 Stat. 651. See *El Paso Brick Co.* v. *McKnight,* 233 U. S. 250, 255, 256, 258.

And it is important to observe that in these acts of Congress, as in the practice of miners, "assessment work" had nothing to do with locating or holding a claim before discovery. On the contrary it was the condition subsequent prescribed by Congress to be performed in order to preserve the exclusive right to the possession of a valid mineral land location upon which discovery had been made. *McLemore* v. *Express Oil Co.,* 158 California, 559, 563. Hence the declaration in the Act of 1903 that where oil lands are located as placer mining claims "the annual assessment labor upon such claims may be done upon any one of a group of claims lying contiguous and owned by the same person," indicates simply the legislative purpose that the necessary assessment work if done upon one of the group should have the same effect as if properly distributed among the several claims; that is to say, the effect of preserving the exclusive right of possession and enjoyment conferred by § 2322 with respect to unpatented claims based upon a previous discovery of oil.

"Group assessment work" did not originate with the Act of 1903. From an early period the economy of operating contiguous mines or claims by a single system was recognized. In § 5 of the Act of May 10, 1872, c. 152, 17 Stat. 92, now § 2324, Rev. Stats., it was provided with respect to the annual labor that "where such claims are held in common such expenditure may be made upon any one claim." Questions as to the precise meaning of

this naturally arose, and it was determined that it applied only to contiguous claims, and that the work must be done for the common benefit or for the purpose of developing all the claims. *Smelting Co.* v. *Kemp,* 104 U. S. 636, 655; *Jackson* v. *Roby,* 109 U. S. 440, 444; *Chambers* v. *Harrington,* 111 U. S. 350, 353; *Anvil Hydraulic Co.* v. *Code,* 182 Fed. Rep. 205, 206.

It is plain that the draftsman of the Act of 1903 had this settled rule in mind, for the bill as introduced, with enacting clause in the same form as finally passed, had this proviso: "*Provided,* That said labor will benefit or tend to the development of such contiguous claims." By committee amendment in the House the words "benefit or" were struck out, and after the word "development" the following were inserted: "or to determine the oil-bearing character," presumably regarded as peculiarly appropriate to oil lands. House Rep. No. 2657, 57th Cong., 1st sess.; Senate Rep. No. 2756, 57th Cong., 2d sess.; 36 Cong. Rec., Pt. 1, p. 83; Pt. 2, pp. 1561, 1682. The committee report contains this explanation of the object of the bill: "The law now requires that upon each mining claim there shall be performed each and every year at least $100 worth of work. The courts have held with reference to lode-mining claims that this annual labor may be done upon any one of a group of mining claims, provided the said work tends to benefit the entire group, but the Land Department of the Government seems to be of opinion that the annual labor upon placer-mining claims must be done upon each of said claims. There is good reason for this holding when applied to the ordinary placer claim containing deposits of gold, because in such case the gold lies upon the surface or near the surface, and general development work being upon and near the surface does not tend to benefit other claims than the one upon which the work is actually done, but in the case of oil-mining claims the situation is different. It is neces-

sary to bore wells for great depths in order to determine whether or not oil exists in paying quantities. These wells are expensive, and it is the opinion of the committee that the industry itself will be more benefited by permitting the owner to spend his means in sinking a single well in order to demonstrate the possibilities of the property than it would to require him to distribute his means among several claims. In other words, it is better that $500 should be spent in one place until the character of the oil deposit has been demonstrated than it is to require the same amount of money to be spent in five different places."

The argument for plaintiff in error, while conceding the general rule to have been established that assessment work could avail nothing except when performed upon or for the benefit of a claim in which a discovery of mineral already had been made, insists that the difficulty and great expense attendant upon the sinking of wells to make discovery of oil made it evident that the application of the doctrine was a great burden upon the oil miner; and that this, having been brought to the attention of Congress, was the moving cause of the enactment of the Act of February 12, 1903. This contention finds no support in the enacting clause, and but little in the proviso. It gives to the somewhat indefinite language of the proviso an effect that would greatly enlarge instead of confining the meaning of what precedes, and would render the statute a radical departure from the previous policy of the mining laws. The legislative history of the act, as well as its phraseology, fails to support the contention.

Nor is there great force in the suggestion that with respect to oil claims upon which discovery already had been made there was no need to encourage the doing of work tending to determine their oil-bearing character, because this would already have been established by the antecedent discovery. It hardly is necessary to say that

the discovery of oil upon several contiguous claims does not render it wholly unimportant that assessment work thereafter done by the common owner upon one of the claims, in order to be credited to him as if it had been distributed among the several claims, shall be of general benefit to the group. This is the object of the act, and except as the proviso specifically declares "determination of oil-bearing character" to be of benefit to the contiguous claims, little is added to the effect of § 2324, Rev. Stats., respecting group assessment work. But we cannot declare a determination of the "oil-bearing character" of a claim upon which oil already has been discovered to be a matter so idle as to require us to seek a strained construction of the statute.

In our opinion the act shows no purpose to dispense with discovery as an essential of a valid oil location or to break down in anywise the recognized distinction between the *pedis possessio* of a prospector doing work for the purpose of discovering oil and the more substantial right of possession of one who has made a discovery and performs annual development work to maintain his right to the mineral until patent is obtained. Hence the Supreme Court of California did not err in overruling the contention that by force of the act discovery work upon the "Sampson claim" having a tendency to determine the oil-bearing character of the contiguous "Rawley-Schley claim" conferred upon plaintiff in error inchoate rights in the latter claim, of which it was not in possession and upon which it had made no discovery.

*Judgment affirmed.*