**HENAULT MINING COMPANY,**
Plaintiff-Appellee,

v.

**Harold TYSK, individually and as Montana State Director of the Bureau of Land Management, and Stewart L. Udall, individually and as Secretary of the Interior, Defendants-Appellants.**

No. 22545.

United States Court of Appeals
Ninth Circuit.

Nov. 14, 1969.

Rehearing Denied Jan. 23, 1970.

Roger P. Marquis (argued), Clyde O. Martz, Asst. Atty. Gen., Raymond N. Zagone, Atty., Washington, D. C., Moody Brickett, U. S. Atty., Clifford E. Schleusner, Asst. U. S. Atty., Billings, Mont., for appellants.

Charles E. Carrell (argued), of Carrell & Scovel, Rapid City, S. D., Crowley, Kilbourne, Haughey, Hanson & Gallagher, Billings, Mont., for appellee.

Before BARNES and MERRILL, Circuit Judges, and TAYLOR, District Judge *.

MERRILL, Circuit Judge:

Henault Mining Company seeks a declaratory judgment establishing the validity of 18 mining claims and for a review, under the Administrative Procedure Act, 5 U.S.C. §§ 1001–1009, of an adverse decision of the Secretary of the Interior. The history of the proceedings is set forth in the margin.[1]

The sole question here presented is whether, as the Government contends, the District Court erred in its determina-

---

* Honorable Fred M. Taylor, Chief United States District Judge for the District of Idaho, sitting by designation.

1. The Multiple Surface Uses Act of 1955, 30 U.S.C. §§ 612–613, provides that the Government retains control of the vegetative surface resources in all mining claims located after 1955. Proceedings under the Act were commenced by Appellant Tysk as Montana State Director of the Bureau of Land Management to determine his right to manage the surface resources of Henault's mining claims. Since those claims antedated the Act by many years Tysk's proceedings entailed a challenge of the validity of the locations on which the claims were based. He asserted that those locations were invalid for lack of discovery of valuable minerals under 30 U.S.C. §§ 22, 23. A hearing examiner ruled that a valid discovery had been made. This decision was reversed by the Department's Office of Appeals and the reversal was upheld by the Secretary. 73 I.D. 184 (1966). This action was then commenced. Summary judgment was rendered in favor of Henault, the opinion of the court appearing at 271 F.Supp. 474 (D.Mont.1967). This appeal by the Government followed.

tion that the locations of the claims in question were based upon valid discoveries within the meaning of 30 U.S.C. § 23. The pertinent facts are set forth in the opinion of the Secretary as follows:

> Factually [Henault's] claim of a discovery is based on the following: The mineral values in the area are found in the Homestake formation which has been extensively mined for gold by the Homestake Mining Company on adjoining property. The Homestake formation dips toward [Henault's] claims and outcrops at some distance beyond the claims. Because of this Wright [Henault's expert witness] testified that he believed that the formation extends beneath the Henault claims. The formation does not outcrop on the claims but a number of Tertiary dikes do. These dikes are believed to originate below the Homestake formation and to penetrate that formation on their way to the surface. The slight mineral values found in the dikes by the extensive sampling are believed to represent leaks from the minerals in the Homestake formation. However, the really valuable mineral deposits are expected to be found at the intersections of the dikes with the Homestake formation and it is to establish this that Wright recommended the drilling of three holes to depths of 3500 to 4000 feet.

> There is no contention that the Homestake formation has actually been exposed on any of the Henault claims. There is also no contention that the Tertiary dikes or intrusions carry valuable mineral deposits. They are claimed merely to establish that the Homestake formation, which is believed to carry the valuable deposits, lies below the surface, possibly a few thousand feet down." United States v. Henault Mining Co., 73 I.D. 184, 192–93 (1966).

Henault's expert on these facts recommended the expenditure of a substantial sum in core drilling to probe for minerals at depth.

Henault contends that this satisfies the "prudent man" test: that the discovered deposits are of such a character that "a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success in developing a valuable mine." Castle v. Womble, 19 L.D. 455, 457 (1894).[2] *See also* 1 American Law of Mining, ¶ 4.20 (1967).

■ We cannot agree. No vein or lode containing valuable mineral deposits has yet been discovered. The dikes that have been discovered through outcroppings simply constitute an indication that a vein or lode, yet unexposed, may exist at depth. A reasonable prediction that valuable minerals exist at depth will not suffice as a "discovery" where the existence of these minerals has not been physically established.[3]

---

2. The prudent man test in a different context was discussed in two opinions handed down since the opinion of the District Court in the case before us. United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968); Converse v. Udall, 399 F.2d 616 (9th Cir. 1968). In both cases the minerals constituting the asserted discovery had actually been exposed. The question was whether the mineral so discovered was valuable.

3. Oregon Basin Oil & Gas Co., 50 L.D. 253 (1924); United States v. Strauss, 59 I.D. 129 (1945); United States v. Miller, 59 I.D. 446 (1947); Monolith Portland Cement Co., 61 I.D. 43 (1952); United States v. Snyder, 72 I.D. 223 (1965); United States v. White, 72 I.D. 522 (1965).

To the same effect in East Tintic Consolidated Mining Claim, 40 L.D. 271, 273 (1911), where it is stated:

"To constitute a valid discovery upon a claim for which patent is sought there must be actually and physically exposed within the limits thereof a vein or lode of mineral-bearing rock in place, possessing in and of itself a present or prospective value for mining purposes."

The decision was reversed in East Tintic Consolidated Mining Co., 43 L.D. 79

■ No prudent man would proceed to the development of a mine on the surface showings we have here. He would drill to ascertain whether values exist at depth. If they do exist he would then proceed to development on the basis of that showing. All this Henault concedes.

The further exploration by drilling as recommended by Henault's expert is not then in the nature of development of a discovered lode. It is a search for values not yet discovered, the discovery of which would justify development.

■ Henault's "prudent man," then, is not a prudent mine developer but a prudent prospector. There would seem to be doubt, however, that the values so far discovered would justify even a prudent prospector in proceeding further. In its brief Henault points out that core drilling is estimated to entail a cost in excess of $150,000. Henault then inquires: "Can it be seriously believed that anyone is going to embark upon capital outlay of that magnitude without the assurance that its locations are supported by the 'discovery' which guarantee him that during and after such an undertaking the land will not be subject to other disposition?"

But the rules of discovery contemplate that it is that which has been discovered that will provide the incentive for development. Henault clearly is not satisfied. It wishes, as further incentive, what is tantamount to a guarantee of patentability—an assurance in advance that win or lose in its search for mineral values it will get its fee title. Public land cannot be dispensed on such a basis.

We note the reassurance of the Secretary that he is not attempting to oust Henault from its claims, but simply to gain control of the surface resources. (See footnote 1, supra). The opinion of the Secretary concludes:

"[T]he determination here need not prevent further efforts by [Henault] to explore and develop the mineral deposits which may be found within the limits of its claims. [Henault] is free to undertake the drilling program recommended by Wright. As long as the land remains open to the operation of the mining laws, the claimant is protected in its right to such deposits as may be found, but until a patent is issued, its use of the land embraced by the claims is limited to mining and other uses of the land incidental to mining." 73 I.D. at 195–96.

■ Henault protests that by holding its discoveries invalid the Secretary has rendered void the locations which are the very foundation of its possessory rights. Henault is not without protection, however. In Union Oil Co. of California v. Smith, 249 U.S. 337, 346–347, 39 S.Ct. 308, 310, 63 L.Ed. 635 (1919), it is stated:

"For since, as a practical matter, exploration must precede the discovery of minerals, and some occupation of the land ordinarily is necessary for adequate and systematic exploration, legal recognition of the *pedis possessio* of a *bona fide* and qualified prospector is universally regarded as a necessity. It is held that upon the public domain a miner may hold the place in which he may be working against all others hav-

(1914). The first opinion, however, is evidently regarded by the Department as good law on the proposition quoted. It has been cited and followed in Austin v. Mann, 56 I.D. 85 (1937); United States v. Mouat, 61 I.D. 289 (1954); United States v. Pressentin & Devisees of the Martin Estate, 71 I.D. 447 (1964). The reversal appears to have been on the question of how much of a vein is suf-

ficient for discovery purposes. The first opinion held that "small quartz veins, stringers of seams" were not enough. The second opinion held that they were; that it is not necessary for the discovery vein to "contain mineral in commercial quantities." As we have noted, however, in the case before us no vein has been discovered at all.

ing no better right, and while he remains in possession, diligently working towards discovery, is entitled—at least for a reasonable time—to be protected against forcible, fraudulent, and clandestine intrusions upon his possession."

In Converse v. Udall, 399 F.2d 616, 620 (9th Cir. 1968), this court stated:

"Here, the decision does not deprive Converse of his possession or of the right further to explore his claim and make a valid discovery."

The District Court is free to accomplish the same result here.

Summary judgment in favor of appellee is reversed. The matter is remanded for further proceedings consistent with the views here expressed.

## On Petition for Rehearing

PER CURIAM.

The panel as constituted in the above case has voted to modify the opinion in the respects hereinafter set forth, to deny the petition for rehearing and to reject the suggestion of a rehearing in banc.

The full court has been advised of the suggestion for an in banc hearing and of the modification proposed by the panel and no judge of the court has requested a vote on the suggestion for rehearing in banc. Fed.R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for a rehearing in banc is rejected.

The opinion heretofore filed is modified in the following two respects:

1. The paragraph commencing line 3 of 768 of the opinion is modified to read as follows:

"We cannot agree. No vein or lode containing valuable mineral deposits has yet been discovered. The dikes that have been discovered through outcroppings simply constitute an indication that a vein or lode, yet unexposed, may exist at depth. A reasonable prediction that valuable minerals exist at depth will not suffice as a 'discovery' where the existence of these minerals has not been physically established.[3]"

2. Footnote 3 is modified to read as follows:

"Oregon Basin Oil & Gas Co., 50 L.D. 253 (1924); United States v. Strauss, 59 I.D. 129 (1945); United States v. Miller, 59 I.D. 446 (1947); Monolith Portland Cement Co., 61 I.D. 43 (1952); United States v. Snyder, 72 I.D. 223 (1965); United States v. White, 72 I.D. 522 (1965).

To the same effect is East Tintic Consolidated Mining Claim, 40 L.D. 271, 273 (1911), where it is stated:

'To constitute a valid discovery upon a claim for which patent is sought there must be actually and physically exposed within the limits thereof a vein or lode of mineral-bearing rock in place, possessing in and of itself a present or prospective value for mining purposes.'

The decision was reversed in East Tintic Consolidated Mining Co., 43 L.D. 79 (1914). The first opinion, however, is evidently regarded by the Department as good law on the proposition quoted. It has been cited and followed in Austin v. Mann, 56 I.D. 85 (1937); United States v. Mouat, 61 I.D. 289 (1954); United States v. Pressentin & Devisees of the Martin Estate, 71 I.D. 447 (1964). The reversal appears to have been on the question of how much of a vein is sufficient for discovery purposes. The first opinion held that 'small quartz veins, stringers or seams' were not enough. The second opinion held that they were; that it is not necessary for the discovery vein to 'contain mineral in commercial quantites.' As we have noted, however, in the case before us no vein has been discovered at all."