**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DONALD E. ENO,
    *Plaintiff-Appellant*,

    v.

SALLY JEWELL; U.S. DEPARTMENT
OF THE INTERIOR; INTERIOR BOARD
OF LAND APPEALS; U.S. FOREST
SERVICE,
    *Defendants-Appellees*.

No. 13-15166

D.C. No.
2:10-cv-01691-
KJM-JFM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Kimberly J. Mueller, District Judge, Presiding

Argued and Submitted
March 13, 2015—San Francisco, California

Filed August 27, 2015

Before: M. Margaret McKeown, Mary H. Murguia,
and Michelle T. Friedland, Circuit Judges.

Opinion by Judge McKeown

# SUMMARY[*]

## Equal Access to Justice Act

The panel affirmed the district court's order affirming the Interior Board of Land Appeals' denial of an application for fees under the Equal Access to Justice Act.

EAJA entitles those who prevail on a legal claim against the U.S. government to an award of fees and costs, but only if they prevail in adversary adjudications; and specifically excluded from this category are proceedings "for the purpose of granting or renewing a license."

The panel held that a hearing under the Mining Claims Rights Restoration Act of 1955 did not fall within EAJA's definition of an adversary adjudication because such a hearing was held for the purpose of granting a license.

# COUNSEL

Steven J. Lechner (argued), Mountain States Legal Foundation, Lakewood, Colorado, for Plaintiff-Appellant.

Robert G. Dreher, Acting Assistant Attorney General, Mark R. Haag, Thekla Hansen-Young, James Maysonett (argued), and Maggie B. Smith, United States Department of Justice, Environment & Natural Resources Division, Washington, D.C.; Edward Alan Olsen, Assistant United States Attorney,

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Sacramento, California; Joshua S. Rider and Andrew R. Varcoe, United States Department of Agriculture, Washington, D.C.; and Kendra Nitta, United States Department of the Interior, Washington, D.C., for Defendants-Appellees.

## **OPINION**

McKEOWN, Circuit Judge:

The Equal Access to Justice Act ("EAJA") "departs from the general rule that each party to a lawsuit pays his or her own legal fees." *Scarborough v. Principi*, 541 U.S. 401, 404 (2004). The EAJA entitles those who prevail on a legal claim against the U.S. government to an award of fees and costs, but only if they prevail in adversary adjudications. Specifically excluded from this category are proceedings "for the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C)(i).

Our question is whether a hearing under the relatively obscure Mining Claims Rights Restoration Act of 1955 (the "Mining Restoration Act")[1] falls within the EAJA's definition of an adversary adjudication. Because such a hearing is held for the purpose of granting a license, we conclude that it does not. We affirm the district court's order affirming the Interior Board of Land Appeals' denial of the application for fees under the EAJA.

---

[1] Although the parties refer to the statute as "MCRRA," we find this acronym to be cumbersome and prefer a more descriptive designation.

## BACKGROUND

Donald Eno owns the Hound Dog placer mining claim, which includes forty acres within the Plumas National Forest in Plumas County, California. The Hound Dog claim contains gold and travertine deposits, the latter giving the area the nickname "Soda Rock." Unlike lode mining claims, in which miners blast or tunnel through solid rock, placer mining claims generally comprise loose deposits of minerals that are not fixed in rock but can be found in streams, gravel, or sandy soil. Placer mining is the type popularized by prospectors during the California Gold Rush. *See* 30 U.S.C. §§ 23, 35; *United States v. Iron Silver Mining Co.*, 128 U.S. 673, 678–80 (1888) (noting that deposits in placer claims "may in most cases be collected by washing or amalgamation without milling"); *What is Placer Gold Mining?*, National Park Service (Aug. 3, 2015), http://www.nps.gov/yuch/learn/historyculture/placer-mining.htm.

This appeal juxtaposes classic questions of administrative law against the backdrop of the arcane mining laws that govern the lands within the Hound Dog claim. A short history of the federal mining law framework gives necessary context.

The General Mining Law of 1872, as amended, grants citizens a right to enter and explore unreserved federal lands for mining: "all valuable mineral deposits in lands belonging to the United States, both surveyed and unsurveyed, shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase . . . ." 30 U.S.C. § 22. "Location" of a mining claim is "the act or series of acts whereby the boundaries of the claim are marked." *Cole v. Ralph*, 252 U.S. 286, 296 (1920); 30 U.S.C.

§§ 28, 35.  A person who locates a claim based on mineral discovery has "exclusive right of possession and enjoyment of all the surface included within the lines of their locations" so long as certain statutory requirements are met.  30 U.S.C. § 26; *Cole*, 252 U.S. at 294–95.

The federal government has broad authority to withdraw public lands from the operation of the General Mining Law. *See Swanson v. Babbitt*, 3 F.3d 1348, 1352 (9th Cir. 1993). Lands so withdrawn "are no longer considered to be within the public domain and therefore are not subject to the statutory rights enumerated in the General Mining Law." *Kosanke v. U.S. Dep't of the Interior*, 144 F.3d 873, 874 (D.C. Cir. 1998) (citing *Oklahoma v. Texas*, 258 U.S. 574, 599–602 (1922); *Pathfinder Mines Corp. v. Hodel*, 811 F.2d 1288, 1291 (9th Cir. 1987)).

The Federal Power Act of 1920, 16 U.S.C. § 818, withdrew all lands that were or would be "classified" or "reserved" for power sites from entry or location under the General Mining Law.  *See also* 43 C.F.R. §§ 2300.0-5, 2320.1.  A few decades later, after millions of acres had been withdrawn under the Federal Power Act, Congress passed the Mining Restoration Act, 30 U.S.C. §§ 621–625, which reopened lands classified or reserved for power sites to "entry for location and patent of mining claims and for mining." 30 U.S.C. § 621(a); *see also* S. Rep. No. 84-1150 (1955), *reprinted in* 1955 U.S.C.C.A.N. 3006.    The Mining Restoration Act set forth special provisions regarding placer claims:

> The locator of a placer claim under this chapter, however, shall conduct no mining operations for a period of sixty days after the

> filing of a notice of location . . . . If the
> Secretary of the Interior, within sixty days
> from the filing of the notice of location,
> notifies the locator . . . of the Secretary's
> intention to hold a public hearing to determine
> whether placer mining operations would
> substantially interfere with other uses of the
> land included within the placer claim, mining
> operations on that claim shall be further
> suspended until the Secretary has held the
> hearing and has issued an appropriate order.

30 U.S.C. § 621(b). The Secretary's order "shall provide for one of the following: (1) a complete prohibition of placer mining; (2) a permission to engage in placer mining upon the condition that the locator shall, following placer operations, restore the surface of the claim to the condition in which it was immediately prior to those operations; or (3) a general permission to engage in placer mining." *Id.*

Each of these legal developments has, at some point in time, affected the status of the lands now included within the Hound Dog claim. The lands were originally part of the Delaware 3 placer mining claim, which was located in 1907 under the General Mining Law. In 1993, however, the Delaware 3 claim was declared abandoned.

Gordon Burton and others located the Hound Dog claim on August 15, 1996. The lands included in the claim had been identified in 1927 as Power Site No. 179, and thus were among those lands that had been withdrawn from mineral entry under the Federal Power Act and opened again under the Mining Restoration Act. The day after he located the Hound Dog claim, Burton filed the notice of location as

required by the Mining Restoration Act. 30 U.S.C. § 623. On September 12, 1996, the Bureau of Land Management notified him that the Secretary intended to hold a hearing pursuant to 30 U.S.C. § 621(b), based on the U.S. Forest Service's objections to placer mining of the claim. Mining operations were suspended pending the outcome of the hearing.

In 1997, the U.S. Forest Service sought the withdrawal of the lands within the Hound Dog claim from mineral entry to protect the area's geologic, historical, and cultural properties. Notice of Proposed Withdrawal and Opportunity for Public Meeting, 62 Fed. Reg. 48,668 (Sept. 16, 1997). After a period of notice and comment, the Secretary withdrew the area "from location and entry under the United States mining laws" for 50 years, "[s]ubject to valid existing rights." Public Land Order No. 7406, 64 Fed. Reg. 47,515 (Aug. 31, 1999). The order also stated that the area would remain open to mineral leasing and that the order "does not alter the applicability of those land laws governing the use of the National Forest System land under lease, license, or permit, or governing the disposal of their mineral or vegetative resources other than under the mining laws." *Id.* In 1998, while this withdrawal was pending, Eno acquired the Hound Dog claim from Burton and the others who had located it; Eno then replaced his predecessors in the Mining Restoration Act proceedings.

The hearing took place before an Administrative Law Judge ("ALJ") at the Department of Interior in June 2002. The U.S. Forest Service argued that placer mining would substantially interfere with cultural, geologic, historical, and scenic values of the land, and that these factors outweighed the economic worth of the land's mineral reserves. Eno

countered that the other uses were not substantial and that, in any event, placer mining operations would not substantially interfere with them. Eno won. The ALJ granted him general permission to engage in placer mining. The Interior Board of Land Appeals ("Board") eventually affirmed the grant of general permission to engage in placer mining, although it departed from the ALJ's reasoning and conclusions on several issues.

Citing his success in securing general permission to mine, Eno applied for an EAJA award of more than $180,000 in attorneys' fees and expenses. The EAJA provides for an award of fees and costs in certain adjudications in which a party prevails against the government. The case must be an "adversary adjudication" under 5 U.S.C. § 504(a); the statute excludes "an adjudication for the purpose of . . . granting or renewing a license." 5 U.S.C. § 504(b)(1)(C)(i).

An ALJ denied Eno's application. In affirming, the Board held that the Mining Restoration Act hearing was held for the purpose of granting a license and, alternatively, that it was not an adjudication "under" 5 U.S.C. § 554. Both holdings led to the same conclusion: the EAJA does not apply to this case. The Board did not address whether the government's position was substantially justified.

Eno challenged the ruling before the district court, which affirmed the Board's decision. The district court construed the EAJA narrowly as a waiver of sovereign immunity and reasoned that "any form of permission is a license"— including the order granting Eno general permission to engage in placer mining. The district court concluded that the EAJA does not apply to the Mining Restoration Act hearing because it was held for the purpose of granting a license.

**ANALYSIS**

Eno's case hinges on whether the Mining Restoration Act hearing was an "adversary adjudication" that falls within the EAJA. We review de novo this question of statutory interpretation. *W. Watersheds Project v. Interior Bd. of Land Appeals*, 624 F.3d 983, 986 (9th Cir. 2010).

Congress adopted the EAJA "to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991). The EAJA accomplishes this objective by enabling a party that prevails in certain types of actions to recover fees and expenses. Specifically, the EAJA provides that "[a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses . . . unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust." 5 U.S.C. § 504(a)(1).

Critical to this appeal, the EAJA defines "adversary adjudication" as "an adjudication under section 554 [of the Administrative Procedure Act ("APA")] in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication . . . for the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C)(i). A "license" is defined by the APA to "include[] the whole or a part of an agency permit, certificate, approval, registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). Like many circuits, we interpret the term expansively based on our reading that "the definition of license in the APA is extremely broad." *Air N.*

*Am. v. Dep't of Transp.*, 937 F.2d 1427, 1437 (9th Cir. 1991); *see also Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 478 (7th Cir. 2005) ("Doubtless [5 U.S.C. § 558] should be read so that it encompasses all situations in which federal approval is required to undertake some act . . . ."); *Atl. Richfield Co. v. United States*, 774 F.2d 1193, 1200 (D.C. Cir. 1985) (noting that the definition of "license" is "broad"). For example, we previously determined that an agency granted a license where "the absence of agency approval prevented the purported licensee from engaging in a specific activity." *Ursack, Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 961 (9th Cir. 2011); *see generally* Black's Law Dictionary (10th ed. 2014) (defining "license" as "permission, usu. revocable, to commit some act that would otherwise be unlawful").

The essence of the order here is a general permission to conduct placer mining operations, which falls squarely within the APA's broad definition of license. The order, as defined by the statute, is a form of permission. *See* 30 U.S.C. § 621(b). Without the order, Eno had no right to engage in placer mining within the Hound Dog claim. For this particular category of lands, the Mining Restoration Act subjects that right to the Secretary's approval. To begin, the Mining Restoration Act mandates that "[t]he owner of any unpatented mining claim located on land [withdrawn or reserved for power development or power sites] shall file for record in the United States district land office of the land district in which the claim is situated . . . within sixty days of location . . . a copy of the notice of location of the claim." 30 U.S.C. § 623. It then conditions the owner's right to proceed with placer mining operations on the receipt of the permission of the Secretary—whether that permission is granted explicitly (as by an order following a public hearing, which occurred in this case) or implicitly (as by the

Secretary's failure to set a public hearing and expiration of the sixty-day waiting period. *See* 30 U.S.C. § 621(b). Once the Secretary gave notice in this case that a public hearing would occur, Eno (and his predecessors) could not conduct placer mining operations. The right to do so came only with the Secretary's order following the hearing.[2] As the Board's order explicitly stated, it affirmed the "granting of general permission to engage in placer mining."

Eno's primary argument presents us with a bit of a chicken-or-the-egg quandary. We must consider what came first: Eno's right to conduct placer mining operations or the hearing. Eno's position is that the Mining Restoration Act hearing was held for the purpose of extinguishing his statutory right to mine—quite the opposite of granting him a license. According to Eno, the right to mine accrued to his predecessors-in-interest by operation of the General Mining Law, 30 U.S.C. § 22, at the time the Hound Dog claim was located. That right then vested in Eno upon his acquisition of the claim. The government, predictably, disagrees.

The disagreement illuminates some peculiar aspects of the statutory scheme created by the Mining Restoration Act. We do not quarrel with Eno's basic assertion that under the General Mining Law, property interests accrue to one who "locates, marks, and records his claim." *See Union Oil Co. v. Smith*, 249 U.S. 337, 348–49 (1919) (noting that such a person has "an exclusive right of possession to the extent of

---

[2] We observed as much in a prior appeal involving Eno and charges of unauthorized removal of minerals from these lands. *See United States v. Hook*, 38 F. App'x 447, 449 (9th Cir. 2002) ("[N]obody had a right to conduct placer mining operations on the property to remove minerals . . . not even Eno himself.").

his claim as located, with the right to extract the minerals, even to exhaustion"); *United States v. Shumway*, 199 F.3d 1093, 1097 (9th Cir. 1999) (discussing the rights and interests that accrue with each stage of patenting a mining claim under the General Mining Law). Unfortunately for Eno, however, the lands at issue were withdrawn from the General Mining Law and thus fall under the Mining Restoration Act, which sets forth its own framework. Under that framework, a locator of a claim may not mine without permission from the Secretary.

The Board is aware that needing to get permission puts those who seek to mine on power sites in a difficult position. In *United States Forest Service v. Milender* ("*Milender II*"), 95 Interior Dec. 155, 163 (IBLA 1988), it explained:

> [A]ny prospective locator who files a notice of location prior to completion of exploration activities runs the risk that he may be unable to show that the benefits accruing from placer mining will, in fact, outweigh the detriments. Most locators would be somewhat reluctant to proceed with full exploration before locating the claim since it might make them subject to topfiling by another locator. But even if they were protected by pedis possessio in pre-location prospecting activities, they would have no assurance that, should they ultimately make a discovery, mining might nevertheless be prohibited under 30 U.S.C. § 621(b) (1982), because the Secretary deemed the damaging effects of mining outweighed the benefits of full-scale development.

Thus, the prospective locator is faced with the Hobson's choice of either locating his claim upon relatively meager showings and running the risk that, should a hearing be held, he will be unable to establish the benefits that might flow from full-scale mining, or of forgoing the location of the claim until exploration is completed, thereby running the risk that, even should he succeed in making a discovery, it will count for nothing should placer mining ultimately be prohibited.

*Id.* at 164–65. Eno, having purchased the Hound Dog claim after it was located, walked into this scenario midstream. Of course, we have the benefit of hindsight and know that Eno avoided the unfortunate outcome forecast in *Milender II*: Eno's showing was sufficient and he won the right to conduct placer mining operations. But when he acquired the claim, his mining rights were not so fixed.

Our reasoning is unaffected by *Collord v. U.S. Department of the Interior*, 154 F.3d 933, 935 (9th Cir. 1998), in which we held that the EAJA applies to proceedings adjudicating the validity of mining claims. Due process required those proceedings to be under § 554 of the APA because the contest proceeding could result in the loss of the claimant's "fully recognized possessory interest" in the claim. *Id.* At issue there was whether an existing claim possessed by the plaintiff could be extinguished. *Collord* did not involve the grant of a license; nothing in that case serves as an analog to the Secretary's order granting Eno general permission to mine. Unlike in *Collord*, a Mining Restoration Act hearing does not implicate the claimant's possessory interest, but rather only the ability to conduct certain activities. Once a

hearing is noticed, the ability to conduct those operations does not exist without an order from the Secretary. It follows that a Mining Restoration Act hearing is held for the purpose of granting a license.[3]

Finally, the fact that we strictly construe waivers of sovereign immunity reinforces our conclusion that the Mining Restoration Act hearing is not an adversary adjudication. Because the EAJA makes the United States liable for attorneys' fees in certain circumstances, it constitutes a waiver of immunity that "must be construed strictly in favor of the sovereign, and not enlarge[d] . . . beyond what the language requires." *Hardisty v. Astrue*, 592 F.3d 1072, 1077 (9th Cir. 2010) (alterations in original) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86 (1983)). We would run afoul of this canon of construction if we broadened the availability of attorneys' fees to Eno's Mining Restoration Act hearing and others like it, without an unambiguous mandate to do so from the EAJA.[4]

**AFFIRMED.**

---

[3] Eno points to another provision of the Mining Restoration Act mentioning "licensees" and argues that the order in this case could not be a license, but this does not change our analysis. *See* 30 U.S.C. § 622 (providing that "the United States, its permittees and licensees shall not be responsible" for loss of a mining claim unless the loss is caused by their negligence). As the district court correctly explained, there can be more than one type of "licensee," and in interpreting the EAJA, we are concerned here with the APA definition.

[4] Because we conclude that the Mining Restoration Act hearing was held for the purpose of granting a license, we need not consider whether it was under § 554 of the APA.