John W. MacGUIRE, Plaintiff,

v.

Roy R. STURGIS et al., Defendants.

Continental Oil Company, a Delaware corporation, et al., Additional Defendants on Counterclaim.

Civ. No. 5523.

United States District Court,
D. Wyoming.

June 3, 1971.

dicial District, Converse County, State of Wyoming, under the Uniform Declaratory Judgments Act of the State of Wyoming, Sections 1–1049 to 1–1064, Wyoming Statutes 1957. After the complaint was filed on December 4, 1970, upon motion by Defendant Roy R. Sturgis (hereinafter referred to as "Sturgis") the action was removed to the United States District Court for the District of Wyoming. On December 24, 1970, Sturgis filed an answer and counterclaim, the latter naming as additional defendants Continental Oil Company (hereinafter referred to as "Conoco"), Natrona Service, Inc., Ray Allemand, Inc. and Ray Allemand (hereinafter referred to as "Allemand"). It was ordered that these named parties be made additional defendants to the counterclaim. Upon motion by Plaintiff John W. MacGuire (hereinafter referred to as "MacGuire"), the Court also ordered that Cotter Corporation and Arthur R. Thayer be made defendants to the complaint. On January 25, 1971, MacGuire served and later filed an amended complaint. Sturgis has filed an answer to the complaint, and Defendants have answered the amended complaint. MacGuire and Additional Defendants have answered the counterclaim. By order of the Court, a pretrial conference was had on April 23, 1971. Trial to the Court occurred on May 3, 4 and 5, 1971.

2. MacGuire is the locator of 8 groups of lode uranium claims—called "Lud A" 1 through 102, 102A, 103–126, 126A, 126B, 126C, 127, 127A, 127B, 127C, 127D, and 128 through 138, "Lud B" 1 through 92, 92A, 93, 93A and 94 through 137, "Art" 1 through 109, 111 through 148, 151 through 171, 173 through 193, 196 through 202, 202A, 203 through 206, 206A, 207, 207A, 208 through 214, 214A, 215 through 265, 265A, 266, 267, 267A, 268 through 272, 272A, 273 through 328, 328A, and 329 through 553, "AW" 1 through 55, 57 through 66, 66A, 67 through 155, 155A, 156, 156A, 157 through 183, 183A, 184, 184A, 185 through 213, 213A, 214, 214A, 215 through 247, 247A, 248, 248A, 249

Houston G. Williams, of Wehrli & Williams, Casper, Wyo., for plaintiff and additional defendants on counterclaim.

Hanes, Carmichael, Johnson & Gage, Cheyenne, Wyo., and Robert C. McCain, Denver, Colo., for defendants Roy R. Sturgis and Arthur R. Thayer.

William E. Barton, of Brown, Drew, Apostolos & Massey, Casper, Wyo., for defendant Cotter Corp.

Kent R. Olson, Denver, Colo., for defendant Continental Oil Co.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KERR, District Judge.

### FINDINGS OF FACT

1. This is a civil action brought originally in the District Court, Seventh Ju-

through 281, 281A, and 282 through 297, "Pete" 3 through 90, 94, 95, 95A, 96, 96A, 97 through 99, 99A, 100, 100A, 101 through 173, 175 through 201, 204 through 254, 257, 258, 258A, and 259 through 268, "Vi" 1 through 47 and 50 through 80, "Mag" 1 through 84 and 86 through 195, and "Mit" 1 through 107 (hereinafter referred to as "the MacGuire claims")—in Converse County, Wyoming, located between October 31, 1970 and January 5, 1971. Additional Defendant Natrona Service, Inc. is the alter ego of MacGuire. Conoco has a contract with MacGuire to acquire an interest in the MacGuire claims. Allemand and his alter ego, Allemand, Inc., have an interest in the surface of the lands covered by some of the MacGuire claims.

3. Sturgis is the locator of 5 groups of lode uranium claims—called "Bolo" 1 through 67 and 69 through 156, "Como" 1 through 231, "Mate" 1 through 200, "No-Way" 1 through 47, and "Bingo" 1 through 185 (hereinafter referred to as "the Sturgis claims")—in Converse County, Wyoming, located between October 22, 1970, and November 26, 1970. Defendant Thayer, by contract with Sturgis, has acquired an interest in the Sturgis claims. Defendant Cotter Corporation has a contract with Defendant Thayer to acquire an interest in the Sturgis claims.

4. At the outset of the trial, Defendant Cotter Corporation, through its local counsel, chose not to appear and defend, and MacGuire's motion for a default judgment against said corporation was granted.

5. The geology of the area covered by the MacGuire and Sturgis claims is low dipping sedimentary strata, cropping out throughout the area, of the Tertiary Wasatch formation. Such strata are fluviatile deposits of lenticular sands, clays and shale, derived from igneous rocks of the mountainous region to the south.

6. MacGuire, prior to filing location certificates for the MacGuire claims, performed all of the work on each of these claims as required by Wyo.Stat. § 30–3 and § 30–9 (1957). Defendants, prior to filing location certificates for the Sturgis claims did not perform all of the work on any of these claims as required by said statutes. In adopting abandoned Kerr-McGee and Humble claims, Defendants neither sunk any new discovery shafts nor deepened any existing discovery shafts 10 feet deeper.

7. Location certificates for all of the MacGuire and Sturgis claims were properly recorded in accordance with Wyo. Stat. § 30–1 (1957). However, Defendants admit in their "Suggested Findings of Facts, Conclusions of Law and Judgment" submitted to the Court that the recording by Sturgis of the location certificates and plats for the "Bolo," "Como," "No-Way," and "Mate" groups of claims created no rights of possession in the lands covered thereby, for it was an act intended as a protest to what Sturgis regarded as trespassers upon the "Bingo" claims.

8. MacGuire completed the discovery (validation) work on all of the MacGuire claims as required by Wyo.Stat. § 30–6 (1957), within the 60-day period allowed by Wyo.Stat. § 30–7 (1957), and properly recorded an affidavit thereof for each such claim as required by said § 30–6. Defendants did not complete the discovery work on any of the Sturgis claims as required by said § 30–6. Although Sturgis did record affidavits of such work for all of the Sturgis claims, such affidavits contained material statements which were false, to-wit that in fact such work had been performed.

9. The extent of Defendants' "discovery" work consisted of probes by Sturgis of 11 or 12 pre-existing holes on the "Bingo" group to a depth of 5 or 6 feet with a geiger counter, which, by his own admission, was not very sophisticated and whose magnitude of reading was not great. Defendants have failed to assert a "discovery" in their "Suggested Findings of Facts, Conclusions of Law and Judgment" submitted to the Court and apparently have abandoned this allegation in the counterclaim.

10. MacGuire commenced his on-the-ground location work on October 31, 1970, and completed the same on January 5, 1971. On November 2, 1970, MacGuire commenced drilling discovery (validation) holes on the "Lud A" and "Lud B" MacGuire claims and all validation work and required filings were completed by January 24, 1971. Work on the balance of the MacGuire claims and required filings were completed by February 4, 1971. Upon completion of exploratory drilling of approximately 150 holes on claims adjacent to, and within a six-mile radius of, the "Lud A," "Lud B," and "Art" groups of claims, Conoco commenced an on-the-ground systematic pattern of deep exploratory drilling on the area covered by the MacGuire claims on January 27, 1971. Between this date and March 26, 1971, when such drilling ceased due to spring thaws, approximately 30 exploratory holes out of said 150 were drilled within the "Lud A," "Lud B" and "Art" claims. During this period, at which time Conoco had sleeping trailers, cooking facilities and a field laboratory on the MacGuire claims, well cuttings were taken from these holes and examined in the field, and radiometric logs were run on such holes. Evaluation of these logs was made in the field and in Conoco's Casper, Wyoming, office, and analyses of some of said well cuttings were made in Conoco's laboratories in Ponca City, Oklahoma. All of the information obtained therefrom was part of a continuing geological evaluation being conducted relative to all of the MacGuire claims. On or about June 1, 1971, when the ground has dried, such drilling will be re-commenced until a pattern of exploratory holes has been drilled on the area embraced by the MacGuire claims.

11. Sturgis commenced his on-the-ground location work on October 22, 1970. Initially, such work consisted of measuring distances by speedometer on a station wagon, adopting old Kerr-McGee and Humble posts wherever existing, and, where not existing, staking with some lath and some 2 x 2's. As of October 28, 1970, Defendants had no plans for exploratory drilling, nor does the record disclose Defendants had any plans at any time for such drilling. Defendants employed a surveyor, Mark van Oosten, for staking purposes for the first time in January, 1971. Said surveyor's work, as well as that of one other surveyor employed by Defendants, was confined to Defendants' "Como" claims, which had been previously staked by MacGuire. Defendants' employees Charles Knight and Rick Halsey first attempted to commence drilling the "discovery" holes referred to in Wyo.Stat. § 30-6 (1957) on November 30, 1970, but, before any drilling occurred, were notified by a MacGuire employee, Jack McCoy, that they could not drill because the area to be drilled was claimed by MacGuire and Conoco. These Defendants' employees then departed, but returned again on December 1, 1970. Unable to start the motor for the drilling rig and told by McCoy that they would be reported, they returned to Glenrock, Wyoming. The following day, Knight and Halsey returned to commence such drilling but, arriving at an Allemand farm gate, were told by Allemand that they could do no drilling until they agreed to pay him $1.00 per acre for surface damages. Knight and Halsey then left the area, and no further attempts were made by Defendants to do any drilling whatsoever.

12. MacGuire's and Conoco's employees and agents asserted their *pedis possessio* rights as against Defendants on several occasions and in various forms. On November 17, 1970, Sturgis was telephoned by R. J. Hand, who identified himself as an attorney representing MacGuire and who asserted MacGuire's possessory rights to the MacGuire claims. On November 24, 1970, Defendants' employees Halsey and Louis Ellis were told to leave the MacGuire claims by Conoco employee Bill Bright. On November 30 and December 1, 1970, Defendants' attempts to commence drilling discovery (validation) holes were opposed by MacGuire employee McCoy.

On December 9, 1970, Sturgis was served with the summons and complaint in the instant action. On December 14, 1970, Arlin Krohn, a MacGuire employee, approached Defendants' employee van Oosten and asserted MacGuire's possessory rights to the MacGuire claims. Defendants' only attempt at asserting any possessory rights to the Sturgis claims as against MacGuire and Additional Defendants was in the form of a letter under date of December 1, 1970, from A. Edgar Benton, an attorney then representing Sturgis, to Conoco's Manager, Uranium Exploration Division.

13. Although some of Defendants' stakes were knocked down and broken, Allemand testified he had several hundred head of cattle grazing in the area where and when this allegedly occurred, and Defendants' witness Halsey testified that this could have been caused by livestock. There was no evidence that MacGuire or Additional Defendants were responsible therefor.

14. Allemand, out of concern for surface damage to be caused by equipment and drill holes, as well as the chance of injury to his livestock by such holes and loss of livestock by unlocked gates, independently required MacGuire, Continental and Sturgis to agree to pay him $1.00 per acre for location work, including the drilling of discovery (validation) holes, and $25.00 per exploratory hole. MacGuire so agreed and was given permission to drill; Sturgis did not and made no counter-offer, and he was only given permission to do location work, but not drill. While Defendants insist that Allemand had no legal right to deny them access, Defendants in fact were permitted access in every way except drilling, and in that latter respect Defendants made no attempt, by injunctive relief or any other legal remedy available to them, to obtain access for drilling.

## CONCLUSIONS OF LAW

1. There being diversity of citizenship and the matter in controversy being in excess of $10,000.00, the Court has jurisdiction over the parties and the subject matter.

2. Defendants acquired no rights of any kind or nature relative to locating the Sturgis claims, because all of Defendants' location certificates in respect thereof include an affidavit of discovery work which contains a false material statement or representation in violation of Wyo.Stat. § 30-6 (1957).

3. Defendants acquired no rights of any kind or nature relative to locating the Sturgis claims, because said claims were relocations of abandoned lode claims, and Defendants neither drilled any new discovery shafts nor drilled any original discovery shafts 10 feet deeper nor fixed, in most instances, any new location stakes as required by Wyo.Stat. § 30-9 (1957).

4. Defendants made no discovery of uranium on any of the Sturgis claims, because they took and examined no samples therefrom nor did they drill any holes thereon.

5. When Plaintiff located the MacGuire claims, the land covered thereby was open to location.

6. Plaintiff's location of the MacGuire claims complied with the laws of the United States and State of Wyoming.

7. In a *pedis possessio* conflict between two locators of lode mining claims, the better title prevails.

8. Plaintiff's entry onto the land covered by the MacGuire claims was peaceable and not fraudulant or clandestine, and Plaintiff is presently entitled to the exclusive possession thereof on a group or area basis where, as here, the following exists or was done for his benefit: (a) the geology of the area claimed is similar and the size of the area claimed is reasonable; (b) the discovery (validation) work referred to in Wyo.Stat. § 30-6 (1957) is completed; (c) an overall work program is in effect for the area claimed; (d) such work program is being diligently pursued, *i. e.*, a significant number of exploratory holes have been systematically drilled; and

(e) the nature of the mineral claimed and the cost of development would make it economically impracticable to develop the mineral if the locator is awarded only those claims on which he is actually present and currently working. Plaintiff is entitled to the future exclusive possession thereof so long as he, or his successors in title, remain in possession thereof, working diligently towards a discovery.

9. Since Plaintiff's entry upon the land covered by the Sturgis claims, Defendants have not been in possession thereof and have not been working diligently towards a discovery relative to said claims, and therefore are not entitled to the exclusive possession of any such claims.

10. No conspiracy or unlawful combination existed between and among Plaintiff and Additional Defendants.

11. Plaintiff and Additional Defendants are not liable to Defendants in this action.