COLUMBIA STANDARD CORPORA-
TION, a Nevada Corporation,
Plaintiff-Appellant,

v.

RANCHERS EXPLORATION & DEVEL-
OPMENT, INC., a New Mexico Cor-
poration, Defendant-Appellee.

No. 72-1297.

United States Court of Appeals,
Tenth Circuit.

Sept. 15, 1972.

Rehearing Denied Dec. 13, 1972.

**548**

Clyde O. Martz, Denver, Colo. (W. W. Atkinson, Albuquerque, N. M., and Frank L. Robinson, Denver, Colo., on the brief), for plaintiff-appellant.

Paull Mines, Albuquerque, N. M. (Marshall G. Martin, Albuquerque, N. M., on the brief), for defendant-appellee.

Before SETH, McWILLIAMS and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Columbia Standard Corporation (Columbia), a Nevada corporation, brought this suit to enjoin Ranchers Exploration & Development, Inc. (Ranchers), a New Mexico corporation, from interfering with its operations for perfection of certain lode mining locations on federal public lands in Sandoval County, New Mexico. The District Court held for Ranchers.

Columbia entered the disputed land on January 26, 1972 and staked 157 lode mining claims on January 29 and 30, 1972. Prior to its entry Columbia's employees examined courthouse records and were aware of Ranchers' lode location notices, affidavits of discovery work, and affidavits of annual assessment work. Columbia concluded that Ranchers' claims were invalid and began staking claims. On January 30, 1972 Ranchers demanded that Columbia cease its operations and remove its rigs on the basis of Ranchers' superior possessory rights.

Ranchers staked mining claims over a five-section area in August of 1967 and posted and filed location notices. Affidavits of discovery work were filed on the lode claims for 69 shallow holes, alleging the discovery of shale, sandstone and other minerals in drill holes 10 to 14 feet deep and 2 to 3 inches in diameter. None of the affidavits of discovery work were filed within the 90-day period required by statute. N.M.Stat.

Ann. § 63–2–3.1. From 1967 to November of 1970 Ranchers drilled about 70 deep drillholes and conducted radiometric testing on some of the staked claims. It also graded drill sites, surveyed the area, and prepared geologic maps and data. Ranchers filed proofs of labor for annual assessment work on all of its claims for 1968, 1969, 1970 and 1971.

Columbia's locating agent and geologist, Dale Carlson, knew about Ranchers' deep drilling program before locating Columbia's claims. Carlson began working in the area in dispute in 1954 or 1955. In 1967 he worked for Summit Exploration Company. Summit's claims conflicted with Ranchers' claims and the two companies reached a compromise which Carlson sat in on. At the conference Ranchers stated that it had valid lode claims in the area. The overlapping claims between Ranchers and Summit were divided up between the two companies. Both companies were interested exclusively in exploration and development of uranium, if commercially feasible. Carlson was fully aware of this fact. No processing mill had been constructed in the area to process the uranium then, or at the date of this action.

Carlson also testified that he made a visual inspection of the area with Ray Schultz and Gale Campbell on January 1, 1972 and did not find much of anything. Campbell said they made the inspection on February 1, 1972, at which time he took some photos which were admitted into evidence. Carlson testified that Columbia began its drilling on January 1, 1972 on some of the claims previously staked and claimed by Ranchers. He also testified that on January 29th and 30th Columbia began staking over Ranchers' claims. On that weekend he noticed 26 drill holes, a few stakes, and a graded road up to the top of a mesa. Carlson's and Campbell's conflicting testimony will be discussed in relation to the trial court's finding of a "bad faith" entry on the part of Columbia. Columbia's agents did not ask Ranchers' employees about its work before Columbia

located its claims. Most of Columbia's work in locating its claims was done on the weekend of January 29, 1972. Columbia was staking locations in order to find uranium. It was aware that Ranchers was interested solely in uranium. Carlson testified that it was the only valuable mineral in the area.

The trial court found generally that there was evidence of mineralization on some of the claims; that there were known valuable uranium bearing formations in the immediate vicinity of the land in contest; that Columbia searched the records in Sandoval County; and that from that search alone determined that Ranchers' claims were faulty. The trial court found that Columbia made no effort to examine Ranchers' claims individually on the ground to determine the extent of its staking, possession, discovery or other badges of valid location, and that Columbia made no inquiry of anyone concerning Ranchers' activity on the claims. The Court found that Columbia's geologist searched the records of the Clerk's office in Sandoval County in "late 1970 or early 1971" and that Columbia started staking claims on "a Saturday in late January 1971." The dates are erroneous. The records were searched in late 1971 or early 1972 and staking begun by Columbia in late January, 1972. The trial court held that Columbia's entry on the property was surreptitious and "as such was not made in good faith." It also found that: (a) Columbia had the burden of proving that the challenged lode mining claims of Ranchers were invalid or had been abandoned; (b) Columbia had the burden of proving it had the right to overstake and take possession of the area covered by these claims; and (c) Columbia had failed in its proof.

Columbia contends that: (1) the District Court erred in holding that it had the burden of proving Ranchers' claims were invalid or had been abandoned; (2) Ranchers failed to make a discovery on any of its claims as required by federal law; (3) Ranchers' locations were not made in compliance with law; (4) Ranchers had no possessory rights to the disputed claims at the time of its entry either by location or by pedis possessio; (5) Ranchers' claims are subject to relocation for nonperformance of required annual assessment work; and (6) it is not precluded from entering and locating the subject claims by reason of its knowledge of prior locations, the time and circumstances of its entry, or the source of its information that the land offered favorable prospecting opportunities.

■ Columbia contends that the trial court erred in finding its entry was surreptitious and not in good faith. The trial court based its conclusion on the findings that: (1) Columbia's geologist (Carlson) knew of Ranchers' work and claims on the disputed land; (2) from Columbia's search of the records alone, it determined that Ranchers' claims were faulty and the ground subject to restaking; (3) Columbia made no real effort to examine Ranchers' claims on the ground to determine the extent of staking, possession, discovery or location prior to its entry; (4) Columbia did not ask anyone about Ranchers' activity on the claims; and (5) Columbia started staking claims on a Saturday in late January, 1971. We cannot reverse unless these findings are clearly erroneous. Fed.R.Civ.P. 52; United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Ryan v. Rolland, 434 F.2d 353 (10th Cir. 1970); Wolfe v. Tri-State Insurance Company, 407 F.2d 16 (10th Cir. 1969).

Although none of the trial court's findings would constitute bad faith by Columbia standing alone, when they are considered cumulatively they constitute sufficient evidence on which the trial court could find bad faith. The finding of bad faith was not clearly erroneous.

■ In order to enter on public land, the locator must make a good faith entry. Union Oil Company of California v. Smith, 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635 (1919); Winslow v. Burns, 47 N.M. 29, 132 P.2d 1048 (1943); Johnson

v. Ryan, 43 N.M. 127, 86 P.2d 1040 (1939). Defects by the senior locator are ignored where the junior locator's entry was in bad faith. 1 American Law of Mining, § 5.67 (1971). There is an absence of good faith where the junior locator seeks possession solely on the basis of defects in the senior locator's claims. Ranchers Exploration and Development Co. v. Anaconda Company, 248 F.Supp. 708 (D.Utah 1965); Johnson v. Ryan, *supra*. While mere knowledge of a relocator that a locator claims superior rights does not constitute bad faith when the relocator enters, knowledge of a prior location places a duty upon the relocator to make inquiry to determine the extent of the adverse party's work performed in relation to exploration and development. Johnson v. Ryan, *supra*.

█ Carlson, Columbia's geologist, knew about Ranchers' claims to the disputed land. Therefore, Columbia was under a duty to make actual and visual inquiry and inspection of Ranchers' lode claims and any work performed on the land. Carlson testified that a visual inspection of the property was made by himself, Ray Schultz and Gale Campbell on *January 1, 1972* to determine whether recent work had been done. The visual inspection was made to determine the extent of Ranchers' prior work in the area, including locations and nature of core holes drilled on various claims. Mr. Campbell testified that he took photos on the inspection with Carlson and Schultz on *February 1, 1972* and that he began working for Columbia on January 2, 1972. Columbia began staking on January 29, 1972. The date of the inspection is conflicting, but in any event no inspection was made on a claim to claim basis prior to the date Columbia began staking. When Columbia began staking, Carlson testified that he noticed 26 drill holes, a few stakes and a graded road in the area. He testified that:

> "[w]e didn't particularly make an exhausting survey to try to determine whether all of their stakes were there. These are just the ones we came

across in the course of locating this." (T., Vol. III, p. 71).

Columbia relied almost exclusively, then, on its examination of Ranchers' filings in the courthouse to conclude that Ranchers' locations and discoveries were defective and that the land was open to relocation. Bad faith is further evidenced by the fact that Columbia began drilling on its Win Claims 9 and 26 on which Ranchers had deep discovery holes. A thorough visual examination of those claims by Columbia would have disclosed Ranchers' previous drilling. Ranchers' Exhibit C is a map showing its drill holes, and by placing it under Exhibit D, Ranchers established its deep drill holes on the very claims Columbia began drilling on.

Carlson testified that he did not see any core holes or other indicia of discovery work on Win Claims 9 and 26 prior to Columbia's drilling. Ranchers thereafter offered into evidence its Exhibit C. This exhibit evidences that Ranchers had drilled deep drill holes on the very claims Columbia had commenced its drilling operations on. Columbia did not offer any rebuttal. The only evidence Columbia introduced was that Carlson noticed 26 drill holes on the entire five-section area on the day Columbia began drilling. He did not testify as to the location of these holes on a claim to claim basis. Even though no affidavits of discovery work were filed by Ranchers on Columbia's Win Claims 9 and 26, Columbia overstaked the entire five sections on which Ranchers had filed discovery affidavits for 69 shallow holes on 69 claims. The trial court did not err in concluding that Columbia did not examine Ranchers' claims individually on the ground to determine the extent of staking, discovery or location prior to the time it began staking.

Columbia contends that the trial court erred in holding that it had the burden of proving that Ranchers' claims were invalid or had been abandoned. It argues that Ranchers has the burden to show that the lands were withdrawn from the public domain.

In all actions to recover possession of land one must prevail on the strength of his own title (rights) and not on the weakness of his adversary's title (rights). Kanab Uranium Corporation v. Consolidated Uranium Mines, 227 F.2d 434 (10th Cir. 1955); Adams v. Benedict, 64 N.M. 234, 327 P.2d 308 (1958). The evidence must be viewed in favor of the prior locator. Winslow v. Burns, *supra*. If the claimant fails to show right of possession in himself, he cannot take advantage of the defects in the location of the other claimant.

Columbia sought exclusive possession of the disputed land. It failed in its burden of proving that the land was open to location. Columbia also failed to prove that it entered the disputed land in good faith.

Columbia's other contentions were not decided by the trial court and will not be considered by this court, in light of our holding that the trial court's finding that Columbia's entry was not in good faith is supported by substantial evidence. Columbia is, accordingly, precluded from entering onto the disputed land even though Ranchers' claims were not perfected on all of its claims.

Affirmed.