**CONTINENTAL OIL COMPANY, a corporation, Plaintiff-Appellant and Cross-Appellee,**

v.

**NATRONA SERVICE, INC., a corporation, and John W. MacGuire, Defendants-Appellees and Cross-Appellants.**

Nos. 77–1314, 77–1315.

United States Court of Appeals, Tenth Circuit.

Argued Sept. 27, 1978.

Decided Dec. 13, 1978.

Houston G. Williams of Wehrli & Williams, Casper, Wyo. (Barry G. Williams of Wehrli & Williams, Casper, Wyo., and Bruce R. Merrill, Senior Atty., Continental Oil Co., Houston, Tex. on brief), for plaintiff-appellant and cross-appellee.

Dennis M. Hand of Hand, Hand & Hand, P.C., Casper, Wyo. and H. Byron Mock of Mock, Shearer & Carling, Salt Lake City, Utah (Robert Jerry Hand of Hand, Hand & Hand, P.C., Casper, Wyo., on brief), for defendants-appellees and cross-appellants.

Before SETH, Chief Judge, and DOYLE, Circuit Judge, and STANLEY,* Senior District Judge.

WILLIAM E. DOYLE, Circuit Judge.

This is a declaratory judgment action which was filed by Continental Oil Company (Conoco) against Natrona Service, Inc., a Wyoming corporation, as a diversity action. Also named as a defendant in the case is John W. MacGuire. The purpose of the action was to establish Conoco's right to exclusive possession of certain lode mining claims which it alleged were located by it on public lands. The further allegations were: That Conoco had employed contractors to perfect mining claims in Sweetwater County, Wyoming, to do the necessary work in connection therewith required by the laws of the United States and of Wyoming; the contractors were to locate certain lode mining claims; were required to act in good faith, to file proper mining claims under the laws of the State of Wyoming and to do the requisite work of location, validation and recordation. The contractors through their agents and employees (it is further alleged) entered into possession of the lands covered by said claims and proceeded to perform the work required by the contracts.

In addition, Conoco allegedly conducted a systematic pattern of deep exploratory drilling in the area covered by the claims and on a portion of the claims and allegedly drilled approximately 40,000 total feet in 48 deep holes. The area on which the claims were established, it was said, was reasonable in size and the program was systematic and diligent. Conoco thus sought to establish its rights to all of the claims, admitting that it had not actually been present and currently working on a large number of them, but that it had been in possession of these claims insofar as it was practical to do so and had consistently asserted its rights to them.

Beginning on May 29, 1975, according to further allegations, defendants-appellees Natrona Service, Inc. and John W. MacGuire overstaked some of Conoco's claims, and almost immediately defendant, through its attorney, advised plaintiff that the claimed valid mineral locations in Sweetwater County, Wyoming were invalid and that the area was open for discovery at the time of the locations by defendants. Further, defendants notified plaintiff not to interfere with the rights of the defendants to perform discovery work and to validate the claims. It is alleged that the defendants had full knowledge of the location of the plaintiff's claims and, in fact, entered upon a portion of the lands covered by the said claims and notified defendants that it had verified certain defective claims.

It is alleged, in addition, that defendants continued to carry on activities on a portion of the plaintiff's claims in an effort to overstake and locate mining claims on portions of the area. Conoco, according to its allegations, spent approximately $500,000 in its service contracts with the contractors that it employed for the purpose of airborne reconnaissance, surface geophysical work, surface sampling and deep exploratory drilling.

The complaint stresses that large amounts of money were spent and that plaintiff acted at all times in good faith in its efforts to stake the claims in accordance with the laws of the United States and of

* Of the District of Kansas, sitting by designation.

Wyoming. The prayer is that plaintiff's rights to exclusive possession of the mining claims described in the complaint be recognized and that the defendants be enjoined from interfering in any way with the plaintiff's work and from claiming or assuming any right, title or interest to portions of the land covered thereby, and from attempting to enter upon or take possession of any portion of the land. Also, damages and further relief are prayed for.

Defendants admitted overstaking some of Conoco's claims. The basis for this was examination of the recorded certificates in the County Clerk's office of Sweetwater County, Wyoming, and a determination by them that the said certificates were falsely made. A further alleged offense was that the purported location work of the plaintiff had been examined by the defendants, and it was determined that they did not meet the requirements of the law for location and discovery, marking of surface boundaries and required drilling.

The defendants sought recognition of superior rights to some 1,200 claims. Defendants' counterclaims sought declaratory relief seeking to establish that they had exclusive rights to the contested claims and seeking to establish that Conoco's remaining claims which they had not overstaked were invalid and, therefore, open to entry and location. There were 840 in this latter group, and the trial court, following presentation of all of the evidence, granted a verdict in favor of Conoco as to those which had not been overstaked. The effect of this was to give Conoco exclusive right and control over this group of claims for so long as it continued to perform exploratory and development work at these sites.

The remaining contested claims were submitted to a jury. The verdict was generally in favor of Natrona. In addition, the jury gave answers to interrogatories submitted to it. These were tantamount to specific findings that Conoco had not completed or substantially completed discovery; that there was no overall work program which had been operated by Conoco in the area claimed; that there was no such work program which was being diligently pursued; and, finally, that there was no evidence that a significant number of exploration holes had been systematically drilled.

Following the rendition of the verdict, the trial judge granted plaintiff-appellant's motion for judgment notwithstanding the verdict on some 19 of these disputed claims. It found that the deep drilling done on these by Conoco was sufficient to establish its right to possession under the law.

The contentions of Conoco and Natrona in support of their respective appeals are:

First, that the trial court erred in its formulation of the legal doctrine commonly referred to as *pedis possessio* in that the court failed to apply it to the particular facts here presented, namely, the employment of contractors to carry out the location and validation activity. In essence, Conoco's position was that this doctrine which traditionally had been applied to individual miners should also apply to the use of contractors.

Second, that its evidence established that its compliance with the relevant federal and Wyoming laws was substantial, even though perhaps not in accordance with the strict letter of these laws. Natrona and MacGuire, on the other hand, challenge good faith compliance with the law by Conoco.

Third, in their defense in connection with the cross-appeal, Natrona and MacGuire maintain that the evidence did not support the trial court's granting of directed verdicts for the appellant as to the 840 claims which had not been overstaked by Natrona.

The defendants-appellees cross-appeal on the further ground that the trial court erred in granting judgments notwithstanding the verdicts as to certain claims upon which Conoco had engaged in deep drilling operations.

## I.

The first contention of Conoco that the trial court misapplied or failed to apply the doctrine of *pedis possessio* is the central issue.

The trial court instructed the jury at length and in detail as to the meaning of the doctrine of *pedis possessio*. The judge told the jury that the doctrine is one applied by the courts to protect good faith possession by one actually working toward discovery. The law favors the first locator, the court continued, and protects him against a mere intruder or against one who attempts to enter the area by force, fraud, or by clandestine means; that a junior locator may acquire no rights based on such acts.

The court explained that the rights of the one in possession are enforced by the courts against persons who attempt to enter in bad faith, for (such entry) is contrary to the mining laws' purpose which is to promote good faith and orderly and diligent discovery and development of the mineral reserves.

The jury was told that Conoco relied on the *pedis possessio* doctrine and that it is often necessary for a mineral prospector to go into a large area and to work in that area spending substantial sums in its endeavor to make a discovery of a valuable mineral such as uranium. The court listed the following essential requirements necessary to Conoco's being entitled to exclusive possession of the claims on a group or area basis.

First, that the area that the plaintiff is claiming is similar and the size is reasonable.

Second, that the validation work includes drilling a hole or holes not less than one-half inches in diameter to an aggregate depth of fifty feet with no holes less than ten feet and with one hole designated as a discovery hole if more than one hole has been drilled and showing it by means of a post or permanent marker containing the name of the claim, the name of the discoverer and locator, and the date of the discovery, marking the surface boundaries of the claim with six substantial monuments or stakes set at the four corners of the claim and on each side of the claim. This work must be, the jury was told, substantially completed.

Third, that an overall work program is in effect for the area claimed.

Fourth, that the work is being diligently pursued, that is, that there is evidence that a significant number of exploratory holes have been systematically drilled.

Fifth, that the nature of the mineral claimed and the cost of development would make it economically impractical to develop the mineral if the locator were to be awarded only those claims on which he is actually present and currently working.

Thus the trial court did depart from the strict requirements of actual physical possession of the properties in question and gave recognition to the theory of Conoco that it could make claim to a large number of claims provided that it substantially complied with the requirements of the law.

The court further defined the fundamental requisites when it told the jury that the party who makes the first discovery of valuable minerals and who substantially complies with the location requirements is entitled to the exclusive possession of the lands covered by the claim so long as the claimant continues in possession and performs the annual assessment work or the annual assessment work has been suspended during litigation.

The court also made clear to the jury that the first locator is entitled to have the statutes liberally construed in its favor provided there has been a good faith attempt to comply with the applicable laws; that his claim is not to be defeated by mere technical criticism. The court said further that Natrona and MacGuire could not obtain a superior right by relying only on defects of Conoco's location. For them to prevail, they would have to affirmatively establish the failure of Conoco to render substantial and good faith compliance with the applicable laws, and, further, that their entry upon the land claimed by Conoco was peaceable and not by force or fraud or by clandestine means and in good faith; that it would have to establish, the jury was told, that they complied with the location or validation requirements of the Wyoming statutes,

including the filing of affidavits or statements which truthfully reflected work performed, the date performed, persons who performed it, the location of the work within the claim and the nature of the mineral discovery.

The charge further explained that the fact that Conoco relocated or repapered its claims from time to time and did not complete its validation work within the time the law prescribed is immaterial absent a showing that the rights of the defendant to the grounds in controversy had intervened.

The jury was also told that it was entitled to consider the one or more repostings of claims by Conoco only insofar as "that may indicate the presence or absence of Continental's good faith compliance with the federal and Wyoming mining laws and only to the extent that it may bear upon the adequacy of Continental's diligence in establishing a right of *pedis possessio* to the area covered by all the claims."

The trial court defined the material dispute in the case as being whether Conoco had substantially complied with the validation requirement of the Wyoming law. The jury was told that such compliance existed where there had been no willful departure from the terms or duties imposed on a locator by the mining laws, and where the work had been honestly and faithfully performed; that a failure to drill fifty feet of hole on some of the claims located could be a technical defect only and that it may be that Conoco had or had not met the statutory requirements by substantially complying with them and that this constituted a question of fact for the jury to determine from all of the facts and circumstances.

On the question of the good faith of Natrona and MacGuire, the jury was told that a junior locator lacks good faith when he seeks possession solely on the basis of defects in the senior locator's claims. Mere knowledge, the jury was told, of a relocator that a locator claims superior rights does not constitute bad faith when the relocator enters, but that prior location places a duty on the locator to make inquiry to determine the extent of the adverse party's work per-

formed in relation to exploration and development. Presence or absence of good faith on the part of the defendants in entering the land constituted a question of fact for the jury.

In the preparation of its charge the trial court followed the substance and in some instance the exact wording which this court used in *Columbia Standard Corporation v. Ranchers Exploration & Development, Inc.*, 468 F.2d 547 (10th Cir. 1972). The issue in *Columbia* was whether there had been a good faith entry, and the criteria which were set forth by the court in *Columbia* as to what constitute good faith and bad faith were adopted by the trial court in the case at bar.

The decision of the Supreme Court in *Union Oil Company of California v. Smith*, 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635 (1919) was also applied. The Court commented on the element of possession by the locator as one of the requisites to sustaining the right to the claim prior to discovery. The Court there said:

> Whatever the nature and extent of a possessory right before discovery, all authorities agree that such possession may be maintained only by continued actual occupancy by a qualified locator or his representatives engaged in persistent and diligent prosecution of work looking to the discovery of mineral.

249 U.S. at 348, 39 S.Ct. at 311.

Although this must not be read literally so as to require that there be a continuing presence, it does underline the necessity for substantial compliance with the element of possession and working and thus if a locator merely stakes the claim and performs colorable work, he cannot justifiably maintain that he is in exclusive possession.

## II.

■■ Conoco does not seriously argue that the trial court acted contrary to law. Conoco has candidly requested this court to write definitions and guidelines to the application of the doctrine of *pedis possessio* and particularly as applied to the large

prospectors such as itself. The request is that the doctrine of *pedis possessio* be extended so as to protect the locators and discoverers of a large area and a large group of claims. We can only say in response to this request that the trial judge did not rule out the application of the mining laws to this type of an operation and we do not do so either. At the same time we are powerless to change the fundamental requirements of the law and the response has to be that the prospectors must substantially and in good faith comply with the statutes, and this was the approach of the trial court. On the other hand, there was considerable evidence to support a conclusion of insubstantial compliance by Conoco in this case. As a result, the jury could conclude that Conoco's possession of the embattled area was not a good faith possession. Furthermore, the trial court resolved all doubtful issues in favor of Conoco as a matter of law. Consequently, we are unable to grant any relief based upon the request submitted. It is true that the evidence on behalf of Conoco included the expenditure of large sums of money, approximately $500,000, in airborne reconnaissance, surface geophysical work, surface sampling and deep exploratory drilling. This presentation failed to impress the triers of the facts that Conoco had complied.

Conoco relies on the case of *MacGuire v. Sturgis*, 347 F.Supp. 580 (D.Wyo.1971), in support of its assertion that a prospector is protected so long as he (1) was in actual, physical occupancy of the ground; (2) was doing diligent bona fide work directed toward making a discovery; and (3) if he excluded others from his claim. They maintain that this is the historical application of the doctrine of *pedis possessio*.

A reading of the *MacGuire* opinion shows that its standards do not differ from those which were applied here in deciding whether the appellant was entitled to exclusive possession. *Id.* at 584. The trial court held that the exclusive possession was predicated on the following:

(a) the geology of the area claimed is similar and the size of the area claimed is reasonable; (b) the discovery (validation) work referred to in Wyo.Stat. § 30–6 (1957) is completed; (c) an overall work program is in effect for the area claimed; (d) such work program is being diligently pursued, *i. e.*, a significant number of exploratory holes have been systematically drilled; and (e) the nature of the mineral claimed and the cost of development would make it economically impracticable to develop the mineral if the locator is awarded only those claims on which he is actually present and currently working.

347 F.Supp. at 584.

The evidence here shows that Conoco conducted this work over a long period of time. It started in 1971 when it commenced a study of the area. On June 1974, Conoco entered into a contract with Conrad, later to become Meurer, Serafin & Meurer (MS&M) to stake the claim and to do validation work, but soon thereafter Conoco was to find that Conrad was not getting the work done within the 60-day statutory period required by Wyo.Stat.Ann. § 30–1–107. This statute provides that locators will have 60 days from the time of discovering a lode or staking claim in which to sink a discovery shaft or make the open cut or validation holes provided as an alternative in § 30–1–106. Notwithstanding the deficiencies of Conrad's work, Conoco stayed with that company. Meanwhile, it did sound out MacGuire and the Natrona Corporation. This came to naught.

As of January 1975, Conoco discovered that Conrad was still not in compliance with the contract or the Wyoming statute and learned that there had been a merger with MS&M. Conoco then entered into a contract with MS&M for it to complete the work. The date of this agreement was January 31, 1975.

There was evidence that Conoco was of the impression that the work was being performed satisfactorily, even though it did not recheck the validation holes due to the difficulties flowing from the residue being left in the holes drilled with an auger-type drilling device.

There is a good deal of testimony bearing on the sufficiency or insufficiency of the validation holes. Witnesses testified that they had with few exceptions, drilled to the depth required. The problem, so it was explained, flowed from the holes collapsing after the withdrawal of the drill.

On the other hand, there were numerous witnesses on behalf of Natrona, who testified that they had checked the validation holes and found that they did not comply with the statutory requirements. There was evidence having to do with the use of an auger-type device and the problem generally of dirt going back into the bore hole. There was also testimony concerning the lack of discovery monuments, in violation of the statute, § 30–1–103, Wyo.Stat.Ann. Sometimes these were lying on the ground and sometimes there were none. The same is true of the side centers and the end posts.

The necessary conclusion is that there was adequate evidence to support the jury's verdict. Thus the jury could have believed that Conoco did not have an overall work program for the area as claimed. Also, the jury could have validly determined that Conoco did not act in good faith, tested by the requirement that the senior locator who has diligently pursued a claim, but by ignorance or error has failed to fulfill a technical requirement is protected. *See Western Standard Uranium Co. v. Thurston*, 355 P.2d 377 (Wyo.1960).

We cannot say that the evidence is insubstantial in support of the conclusion that Conoco was neither diligent in pursuing its claim nor in substantial compliance with the law. That being so, there was evidence of a lack of good faith effort to pursue the work and to satisfy the requirements of the law.

Nor can it be concluded that Conoco is entitled to relief in respect to those claims which were overstaked by Natrona and

MacGuire as a matter of law. It is true that in *Columbia Standard Corporation v. Ranchers Exploration & Development, Inc., supra*, the conclusion was that Columbia was barred on account of its illegal entry. There the trial court based its findings on the fact that (1) Columbia's geologist knew of Ranchers' work and claims on the disputed land; (2) from Columbia's search of the records alone, it determined that Ranchers' claims were faulty and the ground subject to restaking; (3) Columbia made no real effort to examine Ranchers' claims on the ground to determine the extent of staking, possession, discovery or location prior to its entry; (4) Columbia did not ask anyone about Ranchers' activity on the claims; and (5) Columbia started staking claims on a Saturday in late January 1971. This court said that these findings were not clearly erroneous and that, considered cumulatively, they constituted enough evidence to justify the trial court's finding that there was a bad faith entry by Columbia.

■ This situation is not present. No such judicial findings appear in this record and indeed the evidence did not support any such cumulative determination. Columbia's entry was shown to have been a bad faith entry. Here, on the other hand, Conoco, in respect at least to the claims which were overstaked by Natrona, had attempted a wholesale location program which could be said to have been designed to tie up large areas of public lands without making any substantial effort to comply with the law.

As shown above, the evidence was adequate to justify the jury verdict with the respect to good faith entry on the part of Natrona Service, Inc.[1]

### III.

Appellee contends that the trial court erred in granting a directed verdict in favor

---

1. The opinion in *Columbia Standard, supra*, contains an expression as to what constitutes bad faith on the part of a relocator. In that case we said:

   While mere knowledge of a relocator that a locator claims superior rights does not constitute bad faith when the relocator enters, knowledge of a prior location places a duty upon the relocator to make inquiry to determine the extent of the adverse party's work performed in relation to exploration and development. *Johnson v. Ryan*, [43 N.M. 127, 86 P.2d 1040] *supra*.
   468 F.2d at 550.
   There can be no question as to Natrona's having made the requisite inquiry here.

of Conoco on the 840 claims which had not been overstaked by Natrona and in granting a judgment notwithstanding the verdict in favor of Conoco on an additional 19 claims. As to this, there were certain claims as to which the appellees did not conduct any filing, did not pursue any locating and did not assert any interest. In these areas the court granted a judgment for Conoco.

■ We must be cognizant of the applicable guidelines in reviewing this action of the district court in entering its judgment notwithstanding the verdict. It is the duty of the trial court to take that view of the evidence most favorable to the party against whom the evidence, and the inferences reasonably drawn therefrom are considered, and determine whether or not, under the law, a verdict might be found for him. 6A Moore's Federal Practice ¶ 59.-08[5]. This court has ruled that a directed verdict is properly granted where there is no evidence or dispute or the evidence, although in conflict, is of such a conclusive nature that if a verdict were reached in favor of one party, judicial discretion would require that it be set aside. *Sandoval v. U. S. Smelting, Refining & Mining Co.*, 544 F.2d 463 (10th Cir. 1976); *Gutierrez v. Union Pacific Railroad Company*, 372 F.2d 121, 122 (10th Cir. 1966).

■ At bar there was much evidence which supported the decision of the trial judge.

Defendant's witness Carl Miller, a driller who worked for Natrona, admitted on cross-examination that there were some areas which were not overstaked by Natrona.

John McGuire, the named party defendant, gave similar testimony.

Different reasons were advanced at trial to explain why these areas were not overstaked. From appellee we hear that these claims should be declared open to the public, not because of any evidence having been presented by Natrona showing that Conoco did not comply with the location and discovery laws, but, rather, because of Natrona's belief that a pattern was established by Conoco's conduct with respect to the disputed claims, and this pattern should rule the disposition of those which it did not locate and discover.

The answer is plain that the burden was on the appellees to prove a failure on the part of Conoco to comply with the law in locating and discovering. We can neither accept patterns nor render a judgment in the abstract. Since no controversy was presented at trial, the directed verdict is to be sustained.

■ As to the further contention that the judgment notwithstanding the verdict should not have been granted in connection with the 19 claims, or 18 as is shown in the Appendix to the trial court's decision and order on this issue, with respect to which claims Conoco had commenced deep drilling operations in 1973 and 1974, Conoco argues that these were not disputed for the reason that Conoco had actual possession and had engaged in deep drilling operations.

Testimony by Conoco's geologist, Mr. Johnson, was that deep drilling operations had been going on at some sites prior to 1973. This was reported by exhibits which reported Conoco's operations.

Appellees could not contradict the evidence of the deep drilling, and so at least as to these claims Conoco is not subject to the same disabilities that were present in the claims which were decided in favor of the appellees. The deep drilling, coupled with Conoco's efforts to validate these claims, furnished evidence of its good faith effort to comply with the law at least in these areas. In fact, deep drilling can be sufficient in compliance with the law if other filing requirements are met.

In *Western Standard Uranium Company v. Thurston*, 355 P.2d 377 (Wyo.1960), it was stated that in cases involving extensive discovery as between rival claimants, as locators claiming under the mineral laws, decisions exhibit liberality in sustaining a finding of discovery. In *Western*, the court upheld the granting of the summary judgment in favor of the first locator. In its analysis of the standards applicable to com-

pliance with discovery laws contained in § 30-1-106 Wyo.Stat.Ann., the court stated that where a locator attempts in good faith to comply with the law, courts are inclined to be liberal in construing his acts so as not to defeat his claim by technical criticism. The interests advanced by Conoco in the judgment notwithstanding the verdict can be upheld without resorting to this rule of construction.

Section 30-1-106 provides that the fifty foot validation requirement is an option which the discoverer may choose in lieu of a discovery shaft. *See* § 30-1-106(b). A discovery shaft is the product of a deep drilling operation. Thus a miner may be in compliance with the law by using deep drilling operations as long as the proper filing requirements are met.

As to these claims, there is no suggestion that such requirements were not met and, therefore, the judgment notwithstanding the verdict was not error.

The judgment of the district court is affirmed.