601 P.2d 1344

**GEOMET EXPLORATION, LTD., a corporation, Appellant,**

v.

**LUCKY Mc URANIUM CORPORATION, a corporation, Appellee.**

No. 1 CA–CIV 4125.

Court of Appeals of Arizona,
Division 1,
Department B.

June 12, 1979.

Rehearing Denied July 10, 1979.

Review Granted Sept. 6, 1979.

W. T. Elsing, Phoenix, Thomas R. Young, Lakewood, Colo., for appellant.

DeConcini, McDonald, Brammer & Yetwin, P.C. by John C. Lacy and Law Offices of Kenneth L. Allen by Kenneth L. Allen, Tucson, for appellee.

## OPINION

OGG, Chief Judge.

In this case we have two competing uranium mining companies claiming mining rights to the same land in the public domain. We must determine which company has the superior right of possession.

The plaintiff/appellee, Lucky Mc Uranium Corporation, brought an action against the defendant/appellant, Geomet Exploration, Ltd., seeking exclusive possession of certain unpatented lode mining claims in Yuma County, and an order restraining Geomet from trespassing upon them. Geomet answered and counter-

claimed, contending it was entitled to exclusive possession. After a trial to the court, judgment was entered for Lucky and Geomet appealed.

There is little dispute on the facts but a wide divergence of opinion on their legal significance. The geology of the area consists of an upper formation of an alluvial fan. There are fifty feet of gravel with a basaltic flow from about 50 to 75 feet in depth. Below that are sandstones and shales, interspersed with more basaltic flows. Indications of mineralization are found from 500 feet to 1400 feet deep.

In August and September of 1976, Lucky, by the use of sophisticated scintillation equipment, operated from an airplane and from the ground, found anomalies that were indicative of a uranium deposit. On approximately November 3, 1976, after extensive investigation and reconnaissance activity, Lucky moved onto the disputed property and located 200 mining claims. The claims were monumented by a team of surveyors with $2'' \times 2''$ wooden posts four to five feet in height with tags indicating the corner and name of each claim. Lucky drilled ten foot holes on each claim which were one and three-quarters to two inches in diameter. Lucky also, in compliance with Arizona mining statutes, recorded notices of the unpatented claims.[1]

After extensive reconnaissance in the area, Geomet, on December 14, 1976, started a drilling operation on one of the Lucky claims. Thereafter Geomet located seven claims on a portion of the two hundred Lucky claims. Employees of Geomet were aware of the prior claims of Lucky, but took the position that Lucky had made no discovery of minerals in place and therefore none of the Lucky claims were valid under state or federal mining law. The pertinent part of 30 U.S.C. § 23 reads:

> [B]ut no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located.

A.R.S. § 27–201 reads:

> Upon discovery of mineral in place on the public domain of the United States the mineral may be located as a lode mining claim by the discoverer for himself, or for himself and others, or for others.

Geomet claims it discovered mineral in place on all seven claims by drilling and detecting signs of mineralization from 500 feet to 1420 feet in depth. This was accomplished by running a scintillation probe down the drilled hole which detected an anomaly on the gamma ray log. Jerry H. Jackson, the district geologist for Lucky, testified that in his opinion Geomet had only found indications of a valuable mineral deposit, and that a gamma ray blip indicating an anomaly does not constitute a discovery. It was his opinion that an assay was the only sure method to determine the discovery of a valuable mineral. Loren Smith, the Geomet geologist, testified Geomet did not run any assays for uranium because the samples were too diluted by the deep drilling operation.

From the testimony of the experts and a reading of the mining articles and cases cited to us, it appears the search for uranium is a search for "anomalies". "Anomaly" is a term used to describe a physical difference between rock types or discontinuities in geologic formations. Indications found by locating anomalies are merely the prelude to the vital discovery eventually made by drilling or shaft sinking to reveal an actual deposit of uranium. *See* Ladendorff, *Enlarging Prediscovery Rights of Mineral Locators*, 6 Rocky Mtn.Min.L.Inst. 1 (1961). We point out this rather technical material to emphasize that the search for uranium is a far cry from the old prospector on a burro searching with pick and shovel for an outcrop of valuable mineral. Some of the mining practices formulated under the General Mining Law of 1872 have little practical validity when applied to the modern search for uranium.

---

1. Lucky complied with the Arizona requirements for mining locations as set out in A.R.S. §§ 27–202, 27–203 and 27–204.

From a reading of the conflicting testimony of the mining experts in this case, the trial court could make the determination that both parties had found indications of a valuable deposit of uranium, but as of the date of trial, neither party had made a valid discovery of valuable mineral in place.

This brings us to the determinative issue in the case. Was Lucky as the first prospector on the land entitled to retain exclusive possession as against Geomet under the mining doctrine of pedis possessio?

■ The doctrine of pedis possessio pertains to possessory rights existing prior to the discovery of valuable mineral. The doctrine is not statutory but has developed through case law as part of local mining customs and rules. The key United States Supreme Court case expounding this doctrine is *Union Oil Co. of California v. Smith*, 249 U.S. 337, 39 S.Ct. 308, 63 L.Ed. 635 (1919). The doctrine set down in that case provides that if a qualified person in good faith enters unappropriated public domain for the purpose of mineral exploration, he is entitled to exclusively hold the land, where he is searching and working, against those having no superior right. He will be protected against all intrusions so long as he remains in continuous, exclusive occupancy and diligently works toward making a discovery of valuable mineral. The courts have consistently upheld this concept as a means of protecting the good-faith prospector and encouraging exploration, even though the concept resulted in a pre-discovery limitation upon the openness of public land to all would-be discoverers. The application of the doctrine must be carefully applied to prevent misuse by protecting a non-diligent or bad-faith prospector at the expense of the legitimate prospector. The three basic elements usually required to determine if one should be given the protection of the doctrine are: (1) actual, physical occupancy of the ground; (2) diligent, bona fide work directed toward making a discovery; and (3) exclusion of others. This protected status may only exist for a reasonable time. *See* Fiske, *Pedis Possessio— Modern Use of an Old Concept*, 15 Rocky Mtn.Min.L.Inst. 181 (1969).

■ In an action to determine the right to possession of an unpatented mining claim, as between a prior locator in possession and a subsequent locator, the evidence of the prior locator will be viewed in the most favorable light. *Bagg v. New Jersey Loan Co.*, 88 Ariz. 182, 354 P.2d 40 (1960).

■ Viewing the evidence in such a light and also most favorable to upholding the judgment of the trial court, we find that Lucky was entitled to the protection of the doctrine of pedis possessio, and that the trial court did not err in granting Lucky the right of possession to the disputed claims.

Lucky was in actual physical occupancy of the claims. The claims had been noticed, posted, and recorded, and ten foot holes had been drilled on each claim pursuant to the requirement of Arizona mining statutes. Lucky was drilling deep exploration holes on other claims in the area, and Geomet was aware the disputed claims were claimed by Lucky. The geology of the area claimed was similar, and the size of the area was reasonable. An overall work and exploration program was in effect and was being diligently pursued. Lucky had spent approximately $48,000 in the conflict area and somewhere between $65,000 and $70,000 on the overall exploration of the two hundred claims. Lucky attempted to exclude others by posting, staking and recording the claims. Agents of Lucky advised agents of Geomet that Geomet was trespassing upon the Lucky claims.

Geomet argues that the doctrine of pedis possessio cannot be used by Lucky because Lucky was not in actual physical possession of the seven disputed claims and the fact Lucky may have been systematically drilling on other claims is immaterial. We disagree. Most mining experts agree that the effective exploration for significant deposits of uranium at considerable depth can only be conducted over a wide area during an extended period of time, according to a comprehensive technological plan. Ladendorff, *supra*. We agree with the reasoning of the court in *MacGuire v. Sturgis*, 347

F.Supp. 580 (D.Wyo.1971). *MacGuire* is a case involving a dispute over the right to possession of unpatented uranium claims under a similar fact situation. There the district court ruled that the original locator of eight groups of unpatented uranium lode claims was entitled to exclusive possession on a group or area basis so long as the locator remained in possession. The court justified the decision from the facts that the geology of the area claims was similar, the size of the area claimed was reasonable, the mining laws of Wyoming had been complied with, and where the overall work program was in effect for the entire area claimed and was being diligently pursued. The court found the nature of the uranium ore claimed and the cost of development would make it economically impractical to develop the mineral if the locator was awarded only such claims on which he was actually present and currently working.

Geomet also infers that the doctrine of pedis possessio only protects a prior locator from a violent, forcible, fraudulent or surreptitious intrusion. Geomet points out that it entered upon the disputed claims openly and peacefully, and that therefore Lucky cannot invoke the doctrine. Although there are cases that seem to lend support to such a position, we do not believe such position to be well reasoned. It is our opinion that a peaceful and open intrusion is just as damaging to one's pre-discovery rights as a violent or surreptitious intrusion. *See* Fiske, *supra* at 200.

For the reasons stated herein, the judgment of the trial court is affirmed.

SCHROEDER, P. J., and JACOBSON, J., concur.